**In the Matter of F. D. P.**

**No. 9063.**

District of Columbia Court of Appeals.

Argued Nov. 11, 1975.

Decided Feb. 17, 1976.

---

Daniel E. Toomey, Washington, D. C., appointed by this court, for appellant.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, Louis P. Robbins, Acting Corp. Counsel, Richard W. Barton and Michael J. Dowd, Jr., Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before FICKLING, KERN and GAL-LAGHER, Associate Judges.

KERN, Associate Judge:

On the morning of August 22, 1974, John D. Black was shot and killed in Southwest Washington in the course of an attempted robbery. Detective Jack Hill was assigned to investigate the homicide of Mr. Black, and in the course of his investigation he questioned several juveniles, including appellant, who came to the police station the afternoon of that same day.

When Detective Hill first talked to appellant at approximately 4:15 p. m., appellant stated that he had *witnessed* the shooting and that four people were involved, but that he himself had not participated. Two other persons interviewed by Hill, however, indicated appellant was involved in the shooting. Upon learning this, Detective Hill placed appellant under arrest and at 4:35 p. m. he advised appellant of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), by reading from a form P.D. 47.[1] Appellant signed the form, thereby asserting he understood his rights and was willing to answer questions without an attorney.

Appellant told the detective that he had been involved in the attempted robbery but that another person (whom he named) had done the shooting. When confronted by appellant, this person accused appellant of lying and claimed that appellant had shot the decedent. Approximately two hours later Detective Hill again advised appellant of his rights and again appellant signed a waiver card. At that time, approximately 6:30 p. m., he confessed shooting Mr. Black, and a written statement was completed and signed by appellant.

In his statement appellant admitted he had participated in a robbery of Wendelin Sonntag just before the attempted robbery and the fatal shooting of Mr. Black. Appellant also stated that the gun used in both crimes was hidden in a brown paper bag in some bushes in his back yard. At least two of appellant's friends also knew the location of the weapon, and described it to Detective Bagley, who went to appellant's house and seized the gun without having obtained a search warrant.

---

1. The P.D. 47 form is a standard card used by the police in order to inform suspects of their rights under *Miranda v. Arizona, supra.* The card contains a description of rights on the front and a list of questions regarding waiver of those rights on the back.

On two or three occasions *before* appellant confessed his involvement in the shooting but *after* he first signed a waiver of rights card, he requested that his older sister be contacted. Although Detective Hill testified that he telephoned appellant's house, no one answered. Appellant's sister arrived at the station after appellant had confessed. No attempt was made by the police to contact appellant's mother. In addition, the detective made no effort to bring appellant before the Director of Social Services, in accordance with D.C. Code 1973, § 16–2311, until after appellant was formally placed under arrest.

A petition was filed the next day (August 23rd) in the Family Division of Superior Court, charging appellant with armed robbery, attempted armed robbery, and felony murder.[2] At the trial the government presented as a witness Mr. Sonntag, who identified appellant as among several persons who had robbed him. Appellant was ultimately found guilty of all three offenses and sentenced to an indeterminate sentence not to exceed two years.

On this appeal appellant alleges four errors by the trial court requiring reversal: 1) its admission over objection of appellant's oral and written statements,[3] 2) its failure to suppress the gun seized without a warrant, 3) its refusal to sever the offenses for trial, and 4) the court's permitting the witness Sonntag to identify appellant at trial.

■ We begin by acknowledging the Supreme Court's admonition that "admissions and confessions of juveniles require special caution." *In re Gault*, 387 U.S. 1, 45, 87 S.Ct. 1428, 1453, 18 L.Ed.2d 527 (1967). Despite the "special care" we must take with confessions by juveniles,

however, we have recognized that they may be obtained upon a clear showing of prior warning and subsequent waiver. *In re J.F.T.*, D.C.App., 320 A.2d 322, 324 (1974).

Our decision in *Rosser v. United States*, D.C.App., 313 A.2d 876, 878 (1974), delineated the factors to be considered in a traditional determination of whether a valid waiver of constitutional rights occurred, including "the individual's prior experience with the legal system, the circumstances of the questioning, any allegation of coercion or trickery resulting in a confession, and any delay between arrest and confession" [footnotes omitted]. Earlier decisions of the federal Court of Appeals for the District of Columbia Circuit involving juveniles have emphasized such factors as "age, education, and information, and all other pertinent facts". *McBride v. Jacobs*, 101 U.S.App.D.C. 189, 190, 247 F.2d 595, 596 (1957), *quoting Williams v. Huff*, 79 U.S.App.D.C. 31, 32, 142 F.2d 91, 92 (1944).

■ Turning to the instant case, we note that appellant at the time of this arrest had been arrested at least two or three times previously and had been read his *Miranda* warnings on each occasion, he had been represented by court-appointed attorneys in at least two trials, and had spent time in custody at the Cedar Knoll Children's Center. Despite his youth (15 years of age), appellant clearly had experience in the criminal process.

On the instant occasion, appellant appeared at the police station voluntarily and twice heard and waived his *Miranda* rights. He agreed to answer questions and the questioning took place intermittently over a period of two hours. After asking that his sister be contacted, Detective Hill

2. D.C.Code 1973, §§ 22–2901, –3202, –2902, –2401.

3. Specifically, appellant argues that his statements should not have been admitted because 1) he impliedly invoked his *Miranda* rights after first having waived them by asking the

detective conducting questioning to call his sister, 2) appellant was not brought before the Director of Social Services until the next day, and 3) appellant's waiver of Fifth and Sixth Amendment rights was not voluntary under the "totality of the circumstances" test.

told appellant that she would be called, but he confessed before she arrived. Appellant makes no claim of coercion, trickery, or intimidation. Even with the more careful consideration of waivers appropriate in juvenile cases, the above facts require a finding that appellant knowingly and intelligently waived his Fifth and Sixth Amendment privileges. As the Supreme Court suggested in *Gault, supra* 387 U.S. at 55, 87 S.Ct. at 1458, we find that appellant's admission was "voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." [Footnote omitted.] Consequently, appellant's oral and written statements were properly admitted at trial.[4]

■ Appellant, citing *People v. Burton,* 6 Cal.3d 375, 99 Cal.Rptr. 1, 491 P.2d 793 (1971), argues that when appellant asked Detective Hill to telephone his sister he was impliedly *revoking* his waiver of his Fifth Amendment right and impliedly *invoking* the protection afforded by *Miranda* that police questioning must cease when the accused so requests. The court in *Burton* explained at 382–83, 99 Cal.Rptr. at 5, 491 P.2d at 797:

> In this case we are called upon to decide whether a minor's request to see his parents "reasonably appears inconsistent

with a present willingness on the part of the suspect to discuss his case freely and completely with police at that time."

We note that the defendant's repeated requests to see his parents in *Burton* were made before he was read his *Miranda* warnings or questioned by the police, and the court found that these requests constituted an assertion of privilege which under *Miranda* required that all questioning must cease. In the instant case, however, appellant signed a waiver of rights card both before and after he asked that his sister be contacted. In addition, he candidly admitted that he knew he could stop talking to the detective whenever he wanted to. Thus, we decline under these circumstances to draw the inference that appellant's request that his sister be contacted was a request that the questioning and answering cease. Given all the circumstances here, we cannot say appellant demonstrated an unwillingness to discuss his case freely and completely. *See People v. Burton, supra.*

Appellant argues in the alternative that his oral and written statements to the police must be suppressed because of the government's failure to bring him before the Director of Social Services, as required by D.C.Code 1973, § 16–2311.[5] Appellant's argument is that § 16–2311 is analogous to Rule 5(a) of the Federal Rules of Criminal Procedure[6] and hence any unnecessary de-

---

4. We also conclude that as a matter of due process appellant's statements to the police were made voluntarily under the totality of the circumstances test. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Chambers v. Florida,* 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940).

5. Section 16–2311 provides:
   (a) A person taking a child into custody shall with all reasonable speed—
   (1) release the child to his parent, guardian, or custodian upon a promise to bring the child before the Division when requested by the Division, unless the child's placement in detention or shelter care appears required as provided in section 16–2310; [or]
   (2) bring the child before the Director of Social Services . . . . .

   (b) When a child is brought before the Director of Social Services, the Director shall in all cases review the need for detention or shelter care prior to the admission of the child to the place of detention or shelter care. The child shall be released to his parent, guardian, or custodian unless the Director of Social Services finds that detention or shelter care is required under section 16–2310. If the child is not released, the Director of Social Services shall advise him of the right to counsel as provided in section 16–2304.

6. Rule 5(a) of the Federal Rules of Criminal Procedure directs the arresting officer to "take the arrested person without unnecessary delay before the nearest available federal magistrate . . . ." In similar language, Superior Court Criminal Rule 5(a) provides that the arresting officer "shall take the arrested person without unnecessary delay before the court."

lay in taking a juvenile to the Director requires exclusion of a confession obtained during the period of delay under the *McNabb-Mallory* doctrine. *See Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819 (1943).

■ In this case appellant appeared voluntarily at the police station to talk with Detective Hill. When the information acquired by Hill then dictated appellant's arrest, he waived in writing his rights and agreed to answer questions. We conclude that appellant's waiver of his rights to counsel and to refrain from self-incrimination, coupled with his agreeing to discuss the offense and make a statement, constituted a temporary waiver of his right to prompt presentment before the Director of Social Services. *See Hawkins v. United States,* D.C.App., 304 A.2d 279 (1973); *Pettyjohn v. United States*, 136 U.S.App. D.C. 69, 419 F.2d 651 (1969), *cert. denied,* 397 U.S. 1058, 90 S.Ct. 1383, 25 L.Ed.2d 676 (1970). As the District of Columbia Circuit Court of Appeals said in *Pettyjohn, supra* at 74, 419 F.2d at 656:

> Surely the law does not allow a person to voluntarily discuss the crime to which he has just confessed for a period of some twenty minutes and then claim on appeal that the twenty minute period during which they [*sic*] spoke constituted a prejudicial delay in violation of his right to rapid arraignment. . . . [Footnote omitted.]

■ Although the confession here was completed within three hours of the arrest, appellant thereafter was *not* taken to the Director of Social Services. Even though such action appears to violate the statute, it "cannot retroactively vitiate an otherwise valid confession." *Pettyjohn v. United States, supra* at 74, 419 F.2d at 656.

Appellant also relies upon the Second Circuit's invalidation of confessions by two juveniles as violative of the Federal Juvenile delinquency Act's command, contained in 18 U.S.C. § 5035 (1970), that "[i]n no case shall such detention be for a longer period than is necessary to produce the juvenile before a committing magistrate." The juveniles in those two cases were held for seven and fifteen hours, respectively, before being questioned and making statements. *United States v. Binet,* 442 F.2d 296 (2d Cir. 1971); *United States v. Glover,* 372 F.2d 43 (2d Cir. 1967). Given the mandatory language contained in Section 5035 of the Delinquency Act, in contrast with the more flexible language of D.C.Code 1973, § 16–2311, and the number of hours elapsing before the questioning began in those cases and ours, we conclude they are distinguishable from the instant case.

■ Appellant next challenges the trial court's refusal to suppress a gun seized without a warrant from appellant's back yard. The government contends that the seizure was lawful and the gun was admissible in evidence because the exigencies of the situation precluded obtaining a search warrant. We agree.

The circumstances of the instant case present two exigencies, the combination of which justified the search for and seizure of the gun introduced at appellant's trial. First, the police knew that appellant had secreted a gun in the bushes behind his house, and that he had informed at least one person of its location.[7] It was reasonable for the police to conclude that others knew where the gun was and might remove it either to protect appellant or to use it. *See United States v. McKinney,*

---

7. The officer who seized the gun, Detective Bagley, had received the information as to its whereabouts from two of appellant's friends and possibly also from appellant himself. One of the friends, James Watson, testified that appellant had been "going around telling everybody . . . he killed the man" and bragging about the offense. The other friend, Yvett Stuart, told Detective Bagley that she had seen appellant hide the gun in the bushes in front of his house.

155 U.S.App.D.C. 299, 301, 477 F.2d 1184, 1186 (1973); *cf. Schmerber v. California,* 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed. 2d 908 (1966); *Preston v. United States,* 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). Second, since the gun was hidden outside, near an area frequented by young children,[8] the police were justifiably concerned with the danger to any child who might discover it. Whether the gun was discovered by design or accident, the possibility of harm to the public at large if the gun fell into "untrained or perhaps malicious hands" justified the police conduct in this case in seizing the potential source of danger. *See Cady v. Dombrowski,* 413 U.S. 433, 443, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *United States v. McKinney, supra.*[9]

■■ We find that appellant's third and fourth assertions of error are without merit. The trial court did not abuse its discretion in refusing to sever the two offenses, since they were committed at approximately the same place and within minutes of each other. In addition, the two offenses were similar and involved a great deal of overlapping evidence. *See Coleman v. United States,* D.C.App., 298 A.2d 40, 42–43 (1972), *cert. denied,* 413 U.S. 921, 93 S.Ct. 3070, 37 L.Ed.2d 1043 (1973). Finally, appellant made no "convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other," which might have necessitated a severance.

*Baker v. United States,* 131 U.S.App.D.C. 7, 26, 401 F.2d 958, 977 (1968) [footnote omitted], *cert. denied,* 400 U.S. 965, 91 S. Ct. 367, 27 L.Ed.2d 384 (1970). Having considered the testimony and the record, we also conclude that the trial court committed no reversible error in allowing the witness Sonntag to identify appellant at trial, since the pre-trial line-up was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 37, 384, 88 S.Ct. 967, 971, 19 L.Ed. 2d 1247 (1968).

*Affirmed.*

---

8. Officer Bailey, who actually seized the weapon in the presence of Detective Bagley, testified that there were a number of children playing in the alley next to appellant's yard.

9. We recognize that the police in *Cady v. Dombrowski* searched an *automobile* rather than real property of appellant, and that the Court has long recognized an exception to the warrant requirement for cars since they may be moved easily. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *see Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In *Cady,* however, the Court did not rely on the possibility of the *car's* being moved

in order to justify the search and seizure, but cited instead the danger to the public and the loss to the police of the evidence if the *gun* were discovered and taken. *See Cady v. Dombrowski, supra* 413 U.S. at 447–48, 93 S.Ct. at 2530–31. Furthermore, the car in *Cady* was not stopped on the highway, but rather was towed to a service station from the scene of an accident and searched there. The requirement of movability has also been undermined by the Court's decision in *Texas v. White,* —— U.S. ——, 96 S.Ct. 304, 46 L.Ed.2d 209, 44 U.S.L.W. 3327 (1975). Consequently we view the search of appellant's yard in this case as governed by *Cady v. Dombrowski, supra.*