**Stanley S. COOPER, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 9466.**

District of Columbia Court of Appeals.

Submitted June 24, 1976.

Decided Sept. 30, 1976.

Ronald G. Nathan, Washington, D.C., appointed by the court, for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, Roger C. Spaeder and Andrea L. Har-

7. *Rowley v. Welch, supra* at 355, 114 F.2d at 503.

nett, Asst. U. S. Attys., Washington, D.C., were on the brief for appellee.

Before KELLY, KERN and YEAGLEY, Associate Judges.

KELLY, Associate Judge:

The facts which emerge from the testimony of government witnesses on appellant's pretrial motion to suppress an inculpatory statement he had made to the police are that on May 30, 1974, there was a robbery at the Argyle Pharmacy in this city during which a pharmacy clerk was killed. Thereafter, on July 5, 1974, Detectives Ronald H. Jones and Melvin Hemphill called at appellant's home and asked that he accompany them to Fourth District Headquarters for questioning about the Argyle incident which he agreed to do. While he was not under arrest, appellant was nevertheless orally advised of his constitutional rights as outlined in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). Upon his arrival at Headquarters, appellant was read the same rights from a PD Form 47 on which the phrase "You are under arrest" had been crossed out. He answered the questions on the reverse side of the PD-47 relating to the waiver of rights in the affirmative and signed the card.[1]

Appellant was told that a long-time acquaintance, Larry Franklin,[2] had implicated him in the Argyle robbery and homicide. Excerpts from Franklin's tape-recorded statement were played for appellant to convince him there was evidence of his participation in the occurrence. Appellant

initially denied, but then admitted his implication in the crimes. He was given a second PD Form 47 to read, with the arrest phrase intact, which he also signed after answering all waiver questions in the affirmative. Appellant was taken to the Homicide Squad Headquarters and was once again advised of his *Miranda* rights by Detective Paul McConnell. There, he gave a statement concerning his participation in the crimes under investigation which was reduced to writing and which he signed.

At the hearing on the motion to suppress, appellant testified he had misconceived the legal significance of his written waivers thinking that his affirmative answers were required as a matter of "normal procedure." He stated he had requested the presence of counsel and declined to answer questions at the outset of interrogation but that the police had ignored his wishes and proceeded with questioning.[3] Appellant's motion was denied after the trial court determined he had been adequately apprised of his constitutional rights and that his written waiver of these rights had been knowingly and intelligently made. The court also found that the statement was made voluntarily as a matter of law.

The *Miranda* opinion makes clear that:

> If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Escobedo v. Illinois*,

---

1. The PD-47 card carries on the front the advice required by *Miranda* to be given a suspect, and on the back questions which when answered affirmatively constitute a waiver of Fifth and Sixth Amendment rights.

2. Franklin, who had been implicated in the robbery himself as a result of appellant's statement and the testimony of an eyewitness

at trial, could not subsequently be located by the police.

3. It is apparent from the trial judge's ruling that he chose to disbelieve appellant's testimony. Under the circumstances, such a determination was well within his discretion. *See United States v. Lyon*, D.C.App., 348 A.2d 297, 299 (1975).

378 U.S. 478, 490 n. 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977. This Court has always set high standards of proof for the waiver of constitutional rights. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and we re-assert these standards as applied to in-custody interrogation. [384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694.]

It is appellant's position that despite the repeated warnings which were given to him by the police officers, the coercive atmosphere of his in-custody interrogation compelled the presence of counsel to protect his Fifth Amendment privilege against self-incrimination. This is not the holding of *Miranda,* however, for the right to counsel clearly may be waived by an accused. Appellant twice acknowledged he understood his rights and waived them in writing on the PD-47 Form. He did so again in his written statement which was prefaced by a full explanation of his rights and which he signed. The officers testified that appellant was neither nervous nor upset; rather, he was cooperative and unemotional. And the fact that at Fourth District Headquarters appellant was confronted with incriminating evidence against him "is not what the law means when it refers to compulsion that undermines voluntariness . . . . *United States v. Poole,* 161 U.S. App.D.C. 289, 295, 495 F.2d 115, 121 (1974). Given the circumstances of this case, we hold the trial court did not err in concluding that the government carried its burden of demonstrating that appellant's inculpatory statement was given voluntarily after a knowing and intelligent waiver of his constitutional rights. *See, e. g., Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Pettyjohn v. United States,* 136 U.S.App.D.C. 69, 419 F.2d 651 (1969), *cert. denied,* 397 U.S. 1058, 90 S.Ct. 1383, 25 L.Ed.2d 676 (1970).

*Affirmed.*