397 A.2d 143 (1979)
In the Matter of W.B.W., Jr., Appellant.
In the Matter of T.E.W., Appellant.
Nos. 12299, 12305.
District of Columbia Court of Appeals.
Argued September 19, 1978.
Decided January 4, 1979.
Arthur J. Whalen, Jr., Washington, D. C., appointed by the court, for appellant W.B.W., Jr.
Jeffrey B. O'Toole, Washington, D. C., appointed by the court, for appellant T.E.W.
David P. Sutton, Asst. Corp. Counsel, with whom John R. Risher, Jr., Corp. Counsel, when the brief was filed, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellee District of Columbia.
*144 Before KELLY, GALLAGHER and HARRIS, Associate Judges.
HARRIS, Associate Judge:
Appellants W.B.W., Jr., (hereinafter W.) and T.E.W. (hereinafter T.), who are brothers and juveniles, seek to overturn their having been found guilty of involuntary manslaughter, D.C.Code 1973, § 22-2405, and malicious burning of property, id., § 22-403. We affirm the manslaughter findings, but reverse the findings on malicious burning of property.

I
One morning the two appellants and their friend Claiborne Watson left the school they were attending and proceeded to an abandoned apartment house which they had frequented in the past.[1] While Watson was in the bathroom of one apartment, W. placed a mattress in front of the bathroom door and T. set it afire. Moments later, T. threw another mattress on top of the first, which set the second on fire. The blaze intensified and Watson was trapped in the bathroom. Appellants fled the building via the fire escape. Watson leaped from the bathroom window to the alley below. He died later from injuries sustained in the fire and the fall.
Subsequent to the fire, but prior to Watson's death, Metropolitan Police detectives Franek and Farkas arrested appellants in the principal's office of the youths' school. The two were separated and advised of their Miranda[2] rights as set forth on a P.D. 47 "rights card." T. answered affirmatively to all the questions contained on the P.D. 47 except one"Do you wish to answer any questions?"to which he responded, "No."[3] W. answered all of the questions affirmatively, stating that he was willing to talk about the fire. No further questioning of either appellant took place at that time.[4]
Appellants then were taken to police headquarters where they were once again separated. Detective Farkas proceeded to take a full statement from W., prefacing each page of the statement with a repetition of the Miranda warnings. The evidence concerning the interchange between Detective Franek and T. is less clear. Detective Franek testified that after arriving at headquarters he commenced routine paper work and did not address any questions to T. Rather, Franek stated, T. began asking him both about the fire and whether W. was giving a statement. Franek replied that W. was giving a statement but that before he could say anything more he had to read T. his rights again. T. then was read and signed another P.D. 47 on which he indicated that he would answer questions.
Contradicting that account, T. testified that he never asked anything of the detective but instead that Detective Franek had instituted the inquiries and began "cussing" at him, which "scared" him into signing the P.D. 47. In any event, T. recounted the circumstances of the fire, substantially as set out above, to the detective who transcribed the information onto the standard police statement form which T. read and signed.
Subsequently, appellants sought to suppress their respective statements, arguing that neither was voluntary. Their motions were denied, and the statements were admitted at the ensuing factfinding hearing in which the trial judge found T. guilty of involuntary manslaughter and the malicious burning of movable property.[5] W. also was found guilty of the same offenses as an aider and abettor.

*145 II
Mindful of the teachings of In re Gault, 387 U.S. 1, 55, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), requiring that great care be taken to insure that a juvenile's statement is voluntary, this court on several occasions has reiterated the factors to be considered in reviewing a youth's waiver. We have noted that voluntariness of the waiver is to be determined in light of the totality of the circumstances, Taylor v. United States, D.C. App., 380 A.2d 989, 992 n. 6 (1977); In re T.T.T., D.C.App., 365 A.2d 366, 369 (1976); In re J.F.T., D.C.App., 320 A.2d 322, 324-25 (1974), with consideration given to the respondent's previous experience with the legal system, In re F.D.P., D.C.App., 352 A.2d 378, 380 (1976); In re M.D.J., D.C.App., 346 A.2d 733, 735 (1975); In re J.F.T., supra, at 325; Rosser v. United States, D.C.App., 313 A.2d 876, 878 (1974), as well as to his sophistication in matters of a criminal nature. In re J.F.T., supra, at 324.
Invoking these precedents and citing the Supreme Court's ruling in Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), T. asks us to rule that his statement was per se inadmissible because of the circumstances surrounding the statement and because it followed closely upon the heels of an initial refusal to answer questions. Yet, as noted by appellant, Mosley itself rejects any per se proscriptions based on Miranda. As we stated in Taylor v. United States, supra, at 993:
The Supreme Court in Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), rejected the proposition that Miranda had "create[d] a per se proscription of any further interrogation once the person being questioned has indicated a desire to remain silent." Id. at 103, n.9, 96 S.Ct. 321 (citing cases). Instead, the Court held that a defendant who had once decided to remain silent may be questioned subsequently if "his `right to cut off questions' was `scrupulously honored.'" Id. at 104, 96 S.Ct. 321, citing Miranda, supra, 384 U.S. at 474, 479, 86 S.Ct. 1602.
Therefore, the question at hand resolves itself to whether there was substantial evidence from which the trial judge properly could conclude that T.'s right to cut off questioning was "scrupulously honored."[6] Appellant contends that there was not.
T. argues that his waiver was a product of inherent coercion and "adolescent fantasy, fright or despair." See In re Gault, supra, 387 U.S. at 55, 87 S.Ct. 1428. The source of this coercion allegedly was Detective Franek's continued interrogation and use of abusive language, as well as T.'s poor reading ability and ability "to conceptualize what he is told, and weigh the situation meaningfully." However, as noted, the allegations against Detective Franek were controverted. Moreover, the evidence regarding T.'s ability to appreciate the warnings indicates that previously he had been arrested, apprised of his rights, and had the benefit of counsel. It is clear from the trial judge's ruling that he did not believe T.'s testimony on these matters. That determination was well within his discretion. Cooper v. United States, D.C.App., 363 A.2d 982, 983 n.3 (1976). Thus we proceed from the premises (1) that T. initiated the discussion and (2) that Detective Franek was not abusive.
With this in mind, and looking as we must at the evidence in the light most favorable to the government, Creek v. United States, D.C.App., 324 A.2d 688, 689 (1974), the record demonstrates that T.'s rights were carefully honored. Upon hearing that T. did not wish to answer questions, Detective Franek immediately ceased the interrogation. He did not try either to resume the questioning or to persuade appellant to reconsider his position. Further, after appellant picked up the questions anew, Detective Franek interrupted him and provided him with fresh warnings. Only then was *146 T.'s statement taken. There was ample support for the trial judge's ruling.[7]
In advancing contentions similar to his brother's, W. argues that his statement also was not voluntarily made. Although W. does not allege that any coercion, trickery, or intimidation was involved, In re F.D.P., supra, at 380, he does assert his age (15), his prior inexperience with the legal system, and the lack of parental presence during questioning as bars to the finding of an informed waiver. We disagree.
It is true that appellant was young and had not been arrested previously, but these factors have never had the talismanic quality of rendering a juvenile's confession automatically invalid. See In re J.F.T., supra, at 324. They are but factors to be viewed in the totality of relevant circumstances. Juxtaposed against these elements we have uncontroverted evidence indicating that upon request the arresting officer read the P.D. 47 to appellant prior to its being signed, that appellant had no questions about the card, and that he stated he wanted to talk about the fire. When W. did give a statement, each page was prefaced with additional warningswhich he signedand at the end of the statement he was specifically asked whether he understood the warnings that had been given; he answered "yes." Finally, appellant's entire statement was read back to him "word by word" in order to give him the opportunity to correct anything prior to his signing it. Little more could have been done by Detective Franek to insure appellant's comprehension and appreciation of the situation.
The fact that appellant's parents were not present does not alter this conclusion. We have held that the absence of a juvenile's parents does not per se render his statement invalid. In re T.T.T., supra, at 370 n.5; In re J.F.T., supra, at 324-25. Additionally, we have refused to infer an intention to have questioning cease from a request to contact a family member. In re F.D.P., supra, at 381. Similar reticence is justified here. W. did want his mother contacted, but only for the purpose of informing her of where he was; he did not request her presence. Moreover, Detective Franek did attempt to reach her, but to no avail. On these facts we uphold the ruling of the trial court.

III
The remainder of the issues relate to the questions of (1) whether W. could be found guilty as an aider and abettor, (2) if so, is malicious burning of property a lesser-included offense of arson, (3) if not, can the guilty judgments on that charge stand, and (4) whether, if they fail, were appellants nevertheless reckless in the sense necessary to support the findings of guilt of involuntary manslaughter.
At the outset, W. contends that the evidence adduced was insufficient to permit a finding that he was an aider and abettor to any crime that T. may have committed. Appellant's argument is that he merely moved the first mattress in front of the door and had no idea that T. would set it afire. Relevant decisions state clearly, however, that a colloquy between actors or an express statement of intention is not necessary to a finding of aiding and abetting. Rather, presence at the scene will "constitute aiding and abetting if it `. . . designedly encourages the perpetrator, facilitates the unlawful deed . . or . . . stimulates others to render assistance to the criminal act.'" Creek v. United States, supra, at 689, quoting Bailey v. United States, 135 U.S.App.D.C. 95, 98-99, 416 F.2d 1110, 1113-14 (1969); see In re D.M.R., D.C.App., 373 A.2d 235, 236-37 (1977). This presence and conduct raise an inference of guilty participation in the event, Quarles v. United States, D.C.App., 308 A.2d 773, 774-75 (1973), which may be *147 proved by circumstantial evidence. Montgomery v. United States, D.C.App., 384 A.2d 655, 659 (1978). Looking to the facts in this caseto W.'s actions in entering the abandoned building, his putting the mattress in place, and to his previous setting of other fires at the same locationwe conclude that the inference of his guilt was supported by the evidence.
This leads to the next inquiry concerning the nature of the crimes with respect to which W. was an aider and abettor. He and T. were charged with arson, D.C.Code 1973, § 22-401, assault with a dangerous weapon (a burning mattress), id., § 22-502; felony murder, id., § 22-2401; and involuntary manslaughter, id., § 22-2405. Judgments of acquittal were entered for the arson and assault counts. As a result, the felony murder charge necessarily failed. The manslaughter charge remained, however, and it was ultimately resolved in favor of the government as a result of the court's finding that appellants were guilty of malicious burning of property and criminal negligence.
Appellants argue that the trial judge erred in finding them guilty of malicious burning because (1) it was not included as a charge in the delinquency petitions and (2) it is not a lesser-included offense of arson. We agree with these contentions.
D.C.Code 1973, § 16-2305, sets forth the requirements of a delinquency petition. Subsection 2305(d) requires that "the petition shall . . . state the specific statute or ordinance on which the charge is based." Consequently, in order for a delinquency finding to stand it must be based on an offense charged in the petition or, as in an adult criminal proceeding, on a crime which is a lesser-included offense of the one charged.[8] Appellants were not charged with malicious burning of property, so we must determine whether malicious burning is a lesser-included offense of arson.
A lesser-included offense is one which consists entirely of some but not all of the elements of the greater offense. Sansone v. United States, 380 U.S. 343, 349-50, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); Stewart v. United States, D.C.App., 383 A.2d 330, 332 (1978). Applying this definition literally would lead to the conclusion that malicious burning is not a lesser-included offense of arson since there are more elements required to establish malicious burning than arson. Specifically, in addition to the elements of malice, lack of ownership, and injury or attempted injury to property by fire which are common to both offenses (although the last is not identical in both) the statute prohibiting malicious burning also contains a value element.[9] That is, as an element of its prima facie case under § 22-403, the government must establish that the affected property had a value above or below $200.[10]Nichols v. United States, D.C.App., 343 A.2d 336, 341 (1975). There is no such requirement for arson.
The government contends, however, that such an abstract comparison of elements is *148 not the sole means of determining whether one offense is a lesser-included offense of another. Rather, the District would have us apply a broader test as developed in United States v. Whitaker, 144 U.S.App. D.C. 344, 447 F.2d 314 (1971), and as tacitly endorsed in Hall v. United States, D.C.App., 343 A.2d 35 (1975). In Whitaker, the circuit court noted that "[T]he simple mechanistic test of all theoretical elements of the included offense being present in the greater offense charged in the indictment . . . has not always been followed in this Circuit." 144 U.S.App.D.C. at 348 n.11, 447 F.2d at 318 n.11. Instead, the court found that a defendant is entitled to invoke the lesser-included offense doctrine when
a lesser offense is established by the evidence adduced at trial in proof of the greater offense, with the caveat that there must also be an "inherent" relationship between the greater and lesser offenses, i. e., they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense. [144 U.S.App.D.C. at 349, 447 F.2d at 319 (footnote omitted).]
The District maintains that arson and malicious burning have just such an "inherent relationship" with one another.
Although it is apparent that the interests protected by the two statutes are related, it is less evident that proof of malicious burning is necessarily presented as part of a showing of arson. Certainly this would not often be the case with "value," which is never a requisite of proof for arson. More importantly, however, the government has failed to carry its analysis of Whitaker far enough, for the Whitaker court went beyond the statement quoted above and established a further requirement of notice when applying this "novel" approach. See Hall v. United States, supra, at 39. The court held that even if the offenses were found to be inherently related, when an indictment charges only the greater offense there must be sufficient notice to the defendant that he may also face a charge of the lesser offense. 144 U.S.App.D.C. at 350, 447 F.2d at 320. See United States v. Brewster, 165 U.S.App.D.C. 1, 13, 506 F.2d 62, 74 (1974). Thus the prosecutor's right to invoke the lesser-included offense doctrineas was done in this case when the judgments of acquittal were entered on the arson charges "is limited to the offense of which defendant has been given notice by the indictment and the defendant is not subject to conviction for other offenses because of the nature of the proof. What is controlling is the offense charged in the indictment, not the offense established by the trial proof. . .." Kelly v. United States, 125 U.S. App.D.C. 205, 207, 370 F.2d 227, 229 (1966), cert. denied, 388 U.S. 913, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967); see United States v. Whitaker, supra, 144 U.S.App.D.C. at 350-51, 447 F.2d at 320-21.
Applying this analysis, we conclude that although malicious burning is a related offense, it is not a lesser-included offense of arson. A petition charging a juvenile with arson gives no notice that he may face a charge of malicious burning, as an arson charge gives no notice of the essential element of value. This element is a hallmark of malicious burning, one which we have described as "crucial, because the value of the property involved provides the sole distinction between a felony and a misdemeanor."[11]Nichols v. United States, supra, at 341. The only way an individual is on proper notice of facing the offense of malicious burning is to be charged with it. This was not done here. Accordingly, the findings of guilt on this offense must be reversed.
It does not follow from this conclusion, however, that the involuntary manslaughter findings against the brothers must fail. The trial judge was careful to base his rulings in that regard not only on the ground of misdemeanor manslaughter (i. e., *149 malicious burning) but also on criminal negligence. He specifically found that the youths' actions in setting the mattresses on fire and placing them in front of the bathroom door were sufficiently negligent to support a finding of involuntary manslaughter. See United States v. Bradford, D.C.App., 344 A.2d 208 (1975). We could not say that that finding is either plainly wrong or without support in the evidence. See D.C.Code, 1973, § 17-305(a). Therefore, the involuntary manslaughter findings must be affirmed.
Affirmed in part and reversed in part.
NOTES
[1] W. stated that on prior occasions the trio had set fires in other apartments in the building.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] T. answered "yes" to the question: "Are you willing to answer questions without having an attorney present?"
[4] The detectives attempted to contact appellants' parents by telephone, but were unsuccessful.
[5] The latter offense is a violation of D.C.Code 1973, § 22-403. The trial court ruled that this was a lesser-included offense of arson (D.C. Code 1973, § 22-401), a charge on which a judgment of acquittal had been entered.
[6] Our role on review of a purported waiver of constitutional rights is limited to a determination of whether the trial court's ruling is supported by substantial evidence. Peoples v. United States, D.C.App., 395 A.2d 41, 43, (1978); Taylor v. United States, supra, at 992; United States v. McNeil, 140 U.S.App.D.C. 3, 6, 433 F.2d 1109, 1112 (1969).
[7] Our holding in In re T.T.T., supra, upon which appellant relies, does not dissuade us from this ruling. That case was one in which the accused had been with detectives continuously for over ten hours, he stated that he would not answer questions without an attorney, he began giving a statement and then expressly terminated it, and, finally, the officers nonetheless continued questioning.
[8] The government's reliance on In re Coward, D.C.App., 254 A.2d 730 (1969), rev'd on other grounds, 139 U.S.App.D.C. 30, 429 F.2d 214 (1970), for the proposition that specific notice need not be given in a juvenile petition is misplaced. Coward dealt with Code provisions which are no longer in effect.
[9] Both offenses are codified in Chapter 4, Arson, of Title 22, and provide in relevant part:

22-401. [Arson] Whoever shall maliciously burn or attempt to burn any dwelling, or house [etc.] . . . of another person. . . shall suffer imprisonment for not less than one year nor more than ten years.
22-403. [Malicious burning] Whoever maliciously injures or breaks or destroys, or attempts to injure or break or destroy, by fire or otherwise, any public or private property, whether real or personal, not his own, of the value of $200 or more, shall be fined not more than $5,000 or shall be imprisoned for not more than ten years, or both, and if the value of the property be less than $200 shall be fined not more than $1,000 or imprisoned for not more than one year, or both.
[10] In order to be found in violation of § 23-403, some evidence of a minimum value must be established by the government. However, this may be inferred from evidence that the property destroyed had a "useful, functional purpose." Jenkins v. United States, D.C.App., 374 A.2d 581, 586 n.9 (1977), quoting Paige v. United States, D.C.Mun.App., 183 A.2d 759 (1962).
[11] Indeed, in an absolute sense the felony aspect of malicious burning is a "greater" offense than arson in terms of the penalty that can be imposed. See note 9, supra.