**378**

## IV.

**In re M.A., Appellant.**

**No. 07–FS–1313.**

District of Columbia Court of Appeals.

Argued Nov. 1, 2011.

Decided Dec. 22, 2011.

Maya Song, Public Defender Service, with whom James Klein and Mikel–Meredith Weidman, Public Defender Service, were on the brief, for appellant.

John J. Woykovsky, Assistant Attorney General, Office of the Solicitor General, with whom Irvin B. Nathan, Acting Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Attorney General, were on the brief, for appellees.

Before GLICKMAN and THOMPSON, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Appellant M.A. was found guilty of second-degree child sex abuse and adjudicated delinquent. M.A. argues on appeal that the trial court erred in denying a motion to suppress his taped confession because, he asserts, he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. Specifically, he argues that, considering the totality of the circumstances surrounding his taped interview, when the detective told him that "the best thing you can do is tell the truth," the detective directly contradicted his *Miranda* rights and made his confession neither knowing and intelligent nor voluntary. For the reasons set out below, we affirm.

## I. Facts

M.A. was a fifteen year-old who lived with his mother and four year-old sister. He had only been in the United States "eight or nine months" when the relevant events occurred in June 2007. He was attending the ninth grade in the District of Columbia, but his native language was Spanish and he spoke little English. M.A. had no previous experience with the American legal system.

The mother called a neighbor from work to make sure her two children had gone to school. The neighbor, upon entering the house, saw the sister on the bed and M.A. with the zipper on his trousers open, appearing nervous. Later, M.A.'s sister told his mother that M.A. had touched her private parts. His mother told a mental health counselor what his sister had stated, and the counselor notified Child and Family Services. As a result, M.A. was arrested by Detective Flores and transported to the Youth Investigations Branch Office. M.A. was not accompanied by his mother or any adult relatives or friends. Detective Flores began to interview M.A. in Spanish at approximately 10:35 PM. The

interview, which was videotaped, lasted until 11:20 PM (45 minutes).

Detective Flores first told M.A. that he had a right to a qualified interpreter, even though they could effectively communicate in Spanish. M.A. signed a written waiver of his rights to a qualified interpreter. Detective Flores then gave M.A. a PD–47 *Miranda* rights waiver card in Spanish. Detective Flores told M.A. that the card was a list of his rights and had him read aloud the first line to make sure he could read and understand the card. Detective Flores then told M.A. that "[t]hey put [your rights] all there" and had him read the rights silently to himself. After M.A. finished reading the card, Detective Flores told M.A. to flip over the card and answer the questions on the back. M.A. answered "Yes" ("Sí") to all four questions and signed the fifth line.

Detective Flores then began to question M.A. For twenty-three minutes, M.A. provided background information and denied touching L.A. in the genital area or having sexual intercourse with her. After Detective Flores told M.A. that "if you value your mother, value your little sister, the best thing is for you to tell the truth," M.A. had the following dialogue with Detective Flores:

> M.A.: If, all of the charges are against me and I have to stay, how many years would it be?
>
> Detective Flores: I couldn't say, because I don't decide that, a judge decides that. Okay? Why do you ask that?
>
> . . .
>
> M.A.: Just in case I decide to plead guilty, because here I don't think that—even if I didn't do it, I still don't think they'll let me leave.
>
> . . .

> Detective Flores: You think that they won't let you leave?
>
> M.A.: Yes, that's what I think. One, because I'm—because I came from my country, I'm an illegal, I don't, don't, have any papers, I don't have anything.
>
> Detective Flores: You think that because you are here illegally?
>
> M.A.: Uh-huh [affirmative].
>
> Detective Flores: They're automatically going to say that you're guilty.
>
> M.A.: Yes.
>
> Detective Flores: Why do you think that?
>
> M.A.: Just because of what I see on TV.

Detective Flores responded:

> Because of what you see on TV? What I can tell you is, that if you have done something to your little sister, the best thing you can do is tell the truth. I'm telling you the best thing to do is tell the truth, because I think you would be helping your mother. You know that she is very sad when you were arrested. . . . Your little sister was crying. So, if you did do something wrong to your sister, the best thing for you is to say exactly what happened, what you did to her. And, you can start by telling me.

After that exchange, M.A. confessed to touching his sister but continued to deny sexual intercourse. The trial court denied M.A.'s motion to suppress the statements after analyzing several factors, including M.A.'s age, education, immigration status, his knowledge of guilty pleas, his knowledge of jail, his calm demeanor, his lack of manifest reading difficulties, and his failure to ask questions, presumably about his rights. It also found that the most pressure Detective Flores ever placed on M.A. was to tell him that it is best to tell the truth if he values his mother and sister. The trial court found M.A. guilty of sec-

ond-degree child sexual abuse, relying solely on M.A.'s taped confession and corroboration from the neighbor.

## II. Analysis

■ A waiver of *Miranda* rights is valid only if it is (1) "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins,* — U.S. —, —, 130 S.Ct. 2250, 2260, 176 L.Ed.2d 1098 (2010) (citation omitted). We review the trial court's legal conclusions concerning the validity of a *Miranda* waiver *de novo* and uphold the factual findings when they are supported by substantial evidence. *See In re M.A.C.,* 761 A.2d 32, 38 (D.C.2000). "The Supreme Court 'has emphasized that admissions and confessions of juveniles require special caution.'" (citation omitted). The totality of the circumstances analysis applies, which entails consideration of "the juvenile's age, experience, education, background and intelligence, the circumstances under which the statement was given, and whether the juvenile 'has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.'" (citation omitted). "In assessing voluntariness, consideration is given to evidence of physical abuse, the length of detention, the use of trickery, mental or emotional stability, mental capacity, and physical illness or injury." (citation omitted).

■ Appellant first argues that because of his age, education, immigrant status, lack of prior arrests, and the failure to advise him orally of his rights, M.A.'s written waiver on the PD–47 card is not sufficient evidence to make out a prima facie case for a valid waiver of his *Miranda* rights. As the trial court noted, however, M.A. had a calm demeanor, did not manifest any reading difficulties, and did not ask for further clarification. Further, after M.A. signed the PD–47 card, Detective Flores summarized without any objection or confusion from M.A.: "You signed, answered all the questions Yes. You understand your rights and you want to answer questions. And, you are willing to answer questions without having a lawyer present." Under the totality of the circumstances, there is sufficient evidence to support a finding and a legal holding of a knowing, intelligent, and voluntary waiver. *See In re W.B.W.,* 397 A.2d 143, 146 (D.C. 1979) ("It is true that appellant was young and had not been arrested previously, but these factors have never had the talismanic quality of rendering a juvenile's confession automatically invalid. They are but factors to be viewed in the totality of relevant circumstances.") (citation omitted). There appears no reason to view *W.B.W.*'s holding as diluted by this year's decision by the Supreme Court in *J.D.B. v. N. Carolina,* — U.S. —, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011). Here, this fifteen year-old was, as the trial judge found, of calm demeanor with knowledge of the consequences of a guilty plea and the prospects of returning to his country of birth.[1]

■ M.A. next argues that when Detective Flores told him that "the best thing you can do is tell the truth," she directly

---

1. M.A. argues that he "profoundly misunderstood [his] rights and the operation of the criminal justice system" because he thought he would be "'automatically' found guilty simply because he was in the country illegal-

ly." However, M.A.'s concern about not being able to leave does not reflect a "profound misunderstanding" of the legal system, but reflects a recognition possible consequences because of his undocumented status.

contradicted his *Miranda* rights and invalidated his waiver. In support of his position, M.A. relies on *Di Giovanni v. United States,* 810 A.2d 887, 894 (D.C.2002) and *Hart v. Attorney Gen. of State of Florida,* 323 F.3d 884, 894 (11th Cir.2003). In *Di Giovanni,* this court held that a waiver was not knowing, intelligent, and voluntary when a defendant had trouble understanding his rights and the police officer told him that he did not think the defendant needed an attorney and that "it would be best if he told his side of the story." 810 A.2d at 894. In *Hart,* the United States Court of Appeals for the Eleventh Circuit held that when an officer told a defendant that it was a disadvantage to have a lawyer and that "honesty wouldn't hurt him," that officer contradicted the *Miranda* warnings, and thus, the defendant's decision to waive his rights was the product of the officer's deception and the defendant "did not truly understand the nature of his right against self-incrimination or the consequences that would result from waiving it." 323 F.3d at 894–95.

Unlike *Di Giovanni* and *Hart,* the present situation is more akin to that in *Berghuis v. Thompkins,* —— U.S. ——, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010). In *Berghuis,* a detective asked the defendant the following questions, with the defendant responding "Yes" to each one: "Do you believe in God? ... Do you pray to God? ... Do you pray to God to forgive you for shooting that boy down?" *Id.* at 2257. The Supreme Court rejected the argument that the answer was coerced, reasoning: "The fact that [the detective]'s question referred to [the defendant]'s religious beliefs [ ] did not render [his] statement involuntary." *Id.* at 2263 (internal quotation marks omitted).

Here, like in *Thompkins,* any pressure from Detective Flores's statements that it was in M.A.'s best interest to tell the truth

came from pressure to help his mother and sister. Detective Flores told M.A. that, "if you *value your mother, value your little sister,* the best thing is for you to tell the truth." (emphasis added). Later, she told M.A.: "[I]f you have done something to your little sister, the best thing you can do is tell the truth. I'm telling you the best thing to do is tell the truth, because I think you would be *helping your mother.* You know that she was very sad when you were arrested.... Your little sister was crying." (emphasis added). Contrary to M.A.'s assertion, Detective Flores was not telling him that it was in his best legal interest to make incriminating statements, but instead, that it was in his best interest to tell the truth so that he could help his mother and sister.

For the foregoing reasons, we affirm.