UNITED STATES of America

v.

Michael H. HINKLE, Appellant.

No. 72-1990.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 5, 1973.

Decided Nov. 7, 1973.

Rehearing Denied Dec. 4, 1973.

39. United States v. Thompson, 155 U.S.App.D.C. 347, 475 F.2d 931 (1973).

Robert L. Weinberg, Washington, D. C., and John F. Mathews, appointed by this Court, for appellant.

Lee Cross, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, and Warren L. Miller, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

PER CURIAM:

Appellant was indicted for second degree murder. The evidence showing that Hinkle stabbed the decedent was undisputed. Hinkle, himself, testified that he had no recollection of the events that took place on the evening in question because he was intoxicated. His defense rested on claims of self-defense, provocation, lack of malice, and a contention that the fatal wound was not the one he administered, but one that occurred during the surgery occasioned by the initial wound. The jury found him guilty as charged, and he was sentenced to five to twenty years, to run concurrently with sentences in two other cases.

On appeal, Hinkle raises several challenges to his conviction: failure to hold a coroner's inquest into the cause of death; improper jury instructions on the definition of malice; failure to allow the jury to consider appellant's intoxication in deciding whether he acted with sufficient "recklessness" to justify a finding of second degree murder; and failure to grant a subpoena duces tecum for production of the deceased's juvenile records.

We do not address the issues of whether appellant's first and last contentions constitute error, for we find that even if they were error, in the context of this case they were harmless. Although appellant was entitled to a coroner's inquest, Crump v. Anderson, 122 U.S.App.D.C. 173, 352 F.2d 649 (1965), the likelihood that the inquest if held would have produced evidence tending to exculpate him is so remote that we see no justification for reversing, and in effect (since a coroner's inquest is now impossible),[1] dismissing his homicide charge. Similarly, even if Hinkle were entitled to subpoena the deceased's juve-

---

1. The office of coronor and the statutory requirement of an inquest have been abolished in the District of Columbia.

nile records, it seems inconceivable that they would be of any assistance to him. He claims that they might show prior acts that indicate a propensity toward violence, and thereby buttress his claim of self-defense.[2] But appellant's case on self-defense was virtually non-existent, and thus it does not appear that he was harmed by being denied the juvenile records.

Appellant's claim that the trial court gave an improper jury instruction on malice is a troubling one. He requested the proper instruction as set forth in our decision in United States v. Bush, 135 U.S.App.D.C. 67, 416 F.2d 823 (1969). *Bush* prohibited use of the phrase " 'malice' is a state of mind showing a heart regardless of social duty," and in subsequent cases we have advised that the *Bush* instruction should be used "to avoid a claim of reversible error." Carter v. United States, 141 U.S.App.D.C. 259, 437 F.2d 692, 697 (1970).[3] In the face of these decisions, defense counsel's request, and his subsequent objection, the court still gave the improper "social duty" instruction. The Government now admits that the court's instruction was error, but argues it was harmless. We are concerned that the court would simply ignore the proper instruction in these circumstances, but since death was caused by a knife wound, we do not find that appellant was harmed by the erroneous instruction.[4] We hope that in the future, trial courts do not place us in this sort of difficult situation.

We take this occasion to amplify on *Bush* by condemning interrelated portions of the "old" standard instruction:

"Malice" is a state of mind showing a heart regardless of social duty, a mind deliberately bent on mischief, a gener-

ally depraved, wicked and malicious spirit.

In *Bush,* as indicated above, we set forth the need for eliminating the phrase whereby any violation of "social duty" or "duty" might be equated to malice, even though not dangerous to life or limb. On further reflection, we conclude that similar problems of over-reach are presented by the segment that defines malice in terms of "a mind deliberately bent on mischief, a generally depraved, wicked and malicious spirit." Juries are to determine whether specific acts have been committed with requisite culpability, not whether defendants have generally depraved, wicked and malicious spirits. A sound replacement for the original sentence would be simply this:

"Malice" is a state of mind showing a heart that is without regard for the life and safety of others.

Here again we recognize that there are cases where the old instruction could lead a jury to misconstrue its role or be otherwise prejudicial; however, the facts before us do not present such a case. Although we do not reverse Hinkle's conviction, we trust that our comments on the deficiency of the old "standard" instruction will be given heed.

Appellant also alleges error in the failure of the trial court to instruct the jury as to the difference in the nature of recklessness required for second degree murder, and that required for manslaughter. Although we do not foreclose consideration of this issue in an appropriate case, the facts here do not justify serious consideration of the matter at this time.

Otherwise we find appellant's trial without error. His conviction is therefore

Affirmed.

---

2. *See* Evans v. United States, 107 U.S.App.D.C. 324, 277 F.2d 354 (1960).

3. *See also* United States v. Lumpkins, 141 U.S.App.D.C. 387, 439 F.2d 494 (1970).

4. *See* United States v. Johnson, 140 U.S. App.D.C. 54, 433 F.2d 1160, 1164 n. 27 (1970); United States v. McCall, 148 U.S. App.D.C. 444, 460 F.2d 952, 958 (1972).