Duane A. TOWLES, Appellant,

v.

UNITED STATES, Appellee.

No. 82–964.

District of Columbia Court of Appeals.

Argued Sept. 6, 1983.

Decided July 25, 1985.

Richard S. Bromberg, Washington, D.C., appointed by this court, for appellant.

Ava J. Abramowitz, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell and Barry M. Tapp, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER and FERREN, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

This is the second time that this case, which stemmed from a fatal shooting in a dark alley, has been before us after conviction and sentencing in the Superior Court. On the first occasion, appellant challenged his convictions for first-degree (felony) murder, D.C. Code § 22–2401 (1981), two counts of attempted robbery while armed, *id.* §§ 22–2902, –3202, and carrying a pistol without a license, *id.* § 22–3204. We set aside the convictions on the ground that the trial court had committed error in permitting government impeachment of one of its witnesses without an immediate cautionary instruction and remanded the case for a new trial.[1]

Appellant was retried only on those counts of the original indictment with respect to which the first jury had returned guilty verdicts. As the second trial resulted in a hung jury, he was retried again. This time the new jury again convicted him of the armed robbery and unlicensed pistol charges, acquitted him of first-degree (felo-

---

1. *Towles v. United States,* 428 A.2d 836 (D.C. 1981). At the retrial, the government did not call the witness who had repudiated the pretrial statement incriminating himself and appellant.

ny) murder, but found him guilty of second-degree murder, D.C.Code § 22–2403 (1981). On appeal, he assigns several grounds of error, only one of which deserves extended analysis, *viz.*, that the conviction for second-degree murder denied him the immunity conferred by the Double Jeopardy Clause of the Constitution inasmuch as the jury at the first trial had deemed him "not guilty" of this offense when it convicted him of first-degree murder. Perceiving no error, we affirm.

The evidence offered at the third trial in support of the indictment may be summarized as follows:

About 10:00 one night, Dr. Patricio Paez and Andre Colpitts left a restaurant on Columbia Road, N.W. and began walking through a dimly lighted alley toward their car which was parked on 18th Street. They were suddenly overtaken by two young men, one of whom pointed a gun at them and mumbled the word "wallet." As Paez reached for his wallet, the assailant opened fire. The shots wounded Paez and killed Colpitts.

As the gunman (later identified as appellant) and his accomplice[2] fled the scene, they passed a car, which was turning into the alley. As the headlights of his automobile illuminated the intersection, the driver, Rudolph Singleterry, had an opportunity to see their faces. He later selected appellant's picture from an array of photographs and identified him at a line-up as one of the young men in the alley. Paez also attended the line-up where he singled out appellant as the gunman.

Both Singleterry and Paez testified at the trial. The government also called one of the investigating policemen, presented a videotape of the line-up, some photographic exhibits, and rested. The defense, after a motion for judgment of acquittal was denied, called only one witness, the detective who had been present at the line-up.

As previously noted, the amended indictment on which appellant was retried contained no count of second-degree murder. The possible relevance of this offense to the record did not occur until after both sides had rested and the court was conducting a bench conference on the submission of instructions to the jury. At this point, government counsel requested an instruction on second-degree murder as a lesser-included offense of felony murder.

Defense counsel objected, arguing unsuccessfully that the evidence supported an instruction on manslaughter rather than second-degree murder. He did not mention that the jury in appellant's first trial had returned verdicts of not guilty on the counts of second-degree murder.[3] After

---

**2.** In a separate juvenile proceeding, the second youth was found guilty of first-degree murder and other offenses as appellant's accomplice. Those convictions were affirmed by this court in *In re N.N.S.*, No. 11834 (D.C. April 11, 1979).

**3.** The bench discussion on the instructions contains the following:

MR. TAPP: Yes, Your Honor.

Your Honor, I assume maybe the jury—possibly the jury could find that Mr. Towles was in the alley, that he had a pistol, that the word wallet was not used, and therefore, they couldn't find felony murder. So I would ask for an instruction on second-degree murder. They could find as a fact, and I think that would be appropriate as a lesser-included offense instruction. They could find there was not attempted robbery and find Mr. Towles shot these people, but he didn't shoot them in pre-meditation and deliberation, that he shot them in the alley without just cause or other mitigating circumstances, and they could find second-degree murder.

MR. REGAN: That would be manslaughter.

MR. TAPP: No, not manslaughter.

MR. REGAN: Well, I think what Mr. Tapp just postulated is manslaughter and not a murder II.

MR. TAPP: There is no basis in fact of a manslaughter here. We are not talking about an involuntary manslaughter. There's not testimony of heat of passion or provocation to suggest a manslaughter. The only lesser-included offense would be second-degree murder while armed.

THE COURT: I don't understand the request.

MR. TAPP: Well, the jury could find as a matter of fact—

THE COURT: I understand what they could find.

MR. TAPP: That it was not necessarily a felony murder.

the court accepted the government's request, he noted "an objection ... for the record."

After the jury had been dismissed, the defense filed a motion to set aside the jury verdict of second-degree murder on the ground of double jeopardy. This was the first time that the trial court's attention had been drawn to appellant's acquittal of second-degree murder charges at his first trial. The motion was denied. Appellant now urges this court to hold that such denial amounted to prejudicial error.

The government contends appellant lost his right to raise this issue on appeal because he failed to voice double jeopardy as his ground for objecting to jury consideration of the lesser charge of second-degree murder.[4] There is considerable force to this argument, for we have repeatedly held that the appropriate time to state an objection to a ruling (or a tentative ruling) is at the trial itself, thereby affording the presiding judge an opportunity to correct the asserted error before sending the case to the jury. *E.g., Watts v. United States,* 362 A.2d 706 (D.C.1976) (en banc). In *Christian v. United States,* 394 A.2d 1, 38 (D.C. 1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979), and in *Wesley v. United States,* 449 A.2d 282, 283 (1982),

we noted that this principle applied to double jeopardy claims,[5] citing with approval *United States v. Scott,* 150 U.S.App.D.C. 323, 324, 464 F.2d 832, 833 (1972), where the circuit court said:

> Scott did not raise the issue of double jeopardy at the second trial. The constitutional immunity from double jeopardy is a personal right which, if not affirmatively pleaded by the defendant at the time of trial, will be regarded as waived.

■ But even assuming that appellant's noted but unexplained objection at the bench conference on instructions preserved his right to appeal the denial of his post-trial motion, we are of the opinion that in view of his conviction for first-degree murder at the first trial, appellant lacks the legal foundation for complaining that the second-degree murder verdict at the subsequent trial violated immunity from double jeopardy. What appellant apparently overlooks is that second-degree murder is a lesser-included offense of felony murder— the crime of which he was found guilty at the first trial. This was the holding in *Fuller v. United States,* 132 U.S.App.D.C. 264, 293, 407 F.2d 1199, 1228 (1968) (en banc), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).[6] This court has

---

THE COURT: If they find there was not an attempted robbery, I don't—
MR. TAPP: If they find there was not an attempted robbery, they couldn't necessarily find, I think, under the law felony murder. The next lesser-included instruction they go to would be second-degree murder instruction. They could find malice and specific intent to kill.
THE COURT: That is going to require a jury verdict form.

＊     ＊     ＊     ＊     ＊     ＊

MR. REGAN: Before we move any farther, I would note an objection, Your Honor, to the—
THE COURT: Lesser-included?
MR. REGAN: Murder II. Yes. For the record.

**4.** In arguing that appellant waived his right to assert a double jeopardy defense, the government points out the inconsistency between his position here and "his apparent willingness to have the jury instruction on manslaughter,

which—on appellant's present theory—would be equally prohibited by the jury's earlier acquittal on second-degree murder (of which manslaughter is a lesser-included offense)."

**5.** *Accord semble, Paul v. Henderson,* 698 F.2d 589, 592 (2d Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 120, 78 L.Ed.2d 118 (1983); *United States v. Herzog,* 644 F.2d 713, 716 (8th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *United States v. Buonomo,* 441 F.2d 922, 924–25 (7th Cir.), *cert. denied,* 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971).

**6.** Prior to the *Fuller* decision, there might have been some basis for arguing that felony murder and second-degree murder are distinct offenses. The statutory definition of felony murder is defined in D.C.Code § 22–2401 (1981) as a killing committed while perpetrating certain felonies. There is no requirement that the actor intended to kill or inflict bodily harm. Second-degree murder, however, *id.* § 22–2403, which requires that the killing be done with "malice"

deemed this decision controlling precedent. *Harris v. United States, supra* note 6, 373 A.2d at 593; *see also Turner v. United States,* 459 A.2d 1054, 1057 (D.C.1983), *aff'd on rehearing,* 474 A.2d 1293 (D.C. 1984).

Thus, no legal significance can be attached to the first jury's verdict of "not guilty" on the second-degree count, for it is fundamental that guilt of a lesser-included offense is "necessarily established by proof of the greater offense." *Fuller v. United States, supra,* 132 U.S.App.D.C. at 293, 407 F.2d at 1228. Thus, if the jury which found appellant guilty of felony murder had also announced a guilty verdict on the second-degree charge, such verdict would have been deemed a nullity under the doctrine of merger. On numerous occasions, we have not only set aside sentences, but vacated convictions where a jury after rendering verdicts of guilty on a major offense also convicted the same defendant of a lesser-included offense necessarily included therein. *E.g., Harris v. United States, supra* note 6, 373 A.2d at 593 (conviction of second-degree murder vacated in view of felony-murder conviction); *Franey v. United States,* 382 A.2d 1019, 1021 (D.C.1978) (convictions of burglary, robbery, and assault with a dangerous weapon set aside because jury had also convicted defendant

of the greater offense of first-degree burglary while armed and armed robbery).[7] In short, once a jury decides that an accused is guilty of a greater offense, it is powerless to render adverse verdicts on counts charging commission of lesser-included offenses. It necessarily follows that it is equally powerless to acquit the accused of such offenses. Hence, an acquittal verdict on the lesser charge is meaningless under the circumstances of this case.

Such circumstances—*i.e.,* a conviction of the major homicide offense prior to the announcement of a not guilty verdict on a second-degree count—were not present in *Turner v. United States, supra,* where we held that an acquittal on one count of second-degree murder barred further prosecution for this offense even though the jury had been deadlocked on another count of second-degree murder as a lesser-included offense of felony murder. In that case, however, the jury had actually acquitted the defendant of both premeditated and felony murder charges. Accordingly, *Turner* is plainly distinguishable from the case at bar.

The confusion in this case might well have been avoided had the trial court conformed to the procedure we suggested

---

connotes an intention to kill or a wanton disregard for human life. *See United States v. Hinkle,* 159 U.S.App.D.C. 334, 487 F.2d 1205 (1973); *Carter v. United States,* 141 U.S.App.D.C. 259, 437 F.2d 692 (1970), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 655 (1971). But as the circuit court for the District of Columbia recognized in *Fuller, supra,* 132 U.S.App.D.C. at 293, 407 F.2d at 1228, "malice" must be defined for purposes of second-degree murder according to its technical common law meaning.

At common law "malice" included any killing, accidental or intentional, committed in the course of a felony that was itself a life-endangering crime. *Id.* at 293–94, 407 F.2d at 1228–29 (footnote omitted). The state of mind that was viewed at common law as constituting "malice" was established by the intent to commit the felony. This intent was transferred to the killing accompanying the felony to make it a killing done with "malice." *Id.* While this common law doctrine of malice has not been expressly adopted in this jurisdiction, second-degree mur-

der has consistently been treated as a lesser-included offense of felony murder. *See, e.g., Harris v. United States,* 373 A.2d 590, 593 (D.C. 1977); *Jackson v. United States,* 114 U.S.App. D.C. 181, 313 F.2d 572, 574 (1962); *Kitchen v. United States,* 95 U.S.App.D.C. 277, 278, 221 F.2d 832, 833 (1955), *cert. denied,* 357 U.S. 928, 78 S.Ct. 1378, 2 L.Ed.2d 1374 (1958); *Goodall v. United States,* 86 U.S.App.D.C. 148, 180 F.2d 397, *cert. denied,* 339 U.S. 987, 70 S.Ct. 1009, 94 L.Ed. 1389 (1950).

7. In one instance where we failed to apply this principle, *Whalen v. United States,* 379 A.2d 1152 (D.C.1977), and sustained convictions for felony murder and rape, stemming from the same incident, the Supreme Court reversed the judgment holding that rape was a lesser-included offense of felony murder. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (cited in *Doepel v. United States,* 434 A.2d 449, 459 (D.C.), *cert. denied,* 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981)).

on indictments setting forth alternative theories, *viz.*, "[w]hen a greater and lesser-included offense are charged, the proper course is for the trial judge to instruct the jury first to consider the greater offense and then consider the lesser offense, *only* if reasonable doubt exists concerning the accused's guilt of the greater offense." *Franey, supra,* 382 A.2d at 1021 n. 2 (emphasis added). We do not think, however, that the failure of the trial court here to point this out to the jury breathed life into a verdict which it was beyond the function of the jury to render.

Assigning as error the trial court's refusal to sustain a motion for acquittal on the two attempted robbery counts, appellant argues that his subsequent convictions on those charges were not supported by evidence. Viewing the testimony offered by the government in its most favorable light, as we must, we conclude that the trial court's ruling was not error. Dr. Paez, the surviving victim, testified that the gunman used the word "wallet," and that he was about to transfer his billfold to his assailant when the gun went off. In our opinion, this evidence was sufficient to enable the jury to consider the count of attempted armed robbery of Paez.

As the count charging such an attempt on Colpitts constituted the underlying crime on which we are sustaining the second-degree felony murder conviction, we do feel compelled in view of our holding in *Doepel v. United States, supra* note 7, 434 A.2d at 459, to view this offense as merged with the homicide conviction. Accordingly, we are vacating appellant's conviction on this count and the concurrent sentence based upon it.

Appellant also contends that he was denied his right to a speedy trial, an argument also advanced and rejected by this court on his first appeal, when the interval between his arrest and first trial was considered. *Towles v. United States, supra* note 1, 428 A.2d at 841–42.

Since that opinion was released, there was a ten and one-half month interval between our mandate remanding and appellant's first retrial, and then two months between the first and second retrials. The Sixth Amendment right to a speedy trial does not apply to appellate court delays subsequent to a conviction. *See United States v. Alston,* 412 A.2d 351, 356 (D.C. 1980) (en banc). In applying the factors identified by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), we first look to the reasons for the delay. As the lower court concluded, the two months between retrials resulted from neutral administrative delay. Of the preceding ten and one-half month period, as the lower court found, the government was responsible for 34 days, and three months of delay were attributable to appellant. The remainder consisted of institutional delays that are accorded minimal weight in speedy trial determinations because of their neutral nature. *Towles v. United States, supra* note 1, 428 A.2d at 842.

More importantly, appellant has failed to make a substantial showing of prejudice. His assertion that the delay caused him—a prisoner—heightened concern and anxiety is not sufficient to demonstrate prejudice, *Reed v. United States,* 383 A.2d 316, 320 (D.C.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978). The record shows that he was released on bond approximately two months after his convictions were reversed. Moreover, appellant's thesis that he was prejudiced by the fading memories of witnesses is undermined by the fact that testimony had been preserved in transcripts from the first trial.[8] As the trial court noted, faded memories on the part of government witnesses would benefit appellant. Thus, in view of the neutral nature of the delay and the absence of a substantial showing of prejudice, we reject appellant's assertion

**8.** Relevant portions of these transcripts were admitted by stipulation at the retrials.

that he was denied his right to a speedy trial.

*Affirmed.*

FERREN, *Associate Judge,* concurring:

I join in the court's opinion because I agree that controlling precedent makes second degree murder a lesser included offense of felony murder. *See ante* at 563 n. 6. On that premise, the court is correct: "If the jury which found appellant guilty of felony murder [at the first trial] had also announced a guilty verdict on the second-degree charge, such verdict would have been deemed a nullity under the doctrine of merger." *Ante* at 564. Similarly, "no legal significance can be attached to the first jury's verdict of 'not guilty' on the second-degree count," *ante* at 564, since guilt of that lesser included offense necessarily was established by the felony murder conviction.

I have substantial doubt, however, that second degree murder is a lesser included offense of felony murder.[1] In the present case, the indictment properly charged, and the first jury properly considered, separate counts of felony murder and second degree murder. "The offenses are distinct in the sense that they have different elements." *Fuller v. United States,* 132 U.S.App.D.C. 264, 289, 407 F.2d 1199, 1224 (1968) (en banc) (footnote omitted), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969). The first only "requires that the killing occur in the course of certain enumerated felonies." *Id.; see* D.C.Code § 22-2401 (1981); *supra* note 1. The second requires "malice aforethought." D.C. Code § 22-2403 (1981); *Fuller,* 132 U.S. App.D.C. at 293, 407 F.2d at 1228. The only basis for characterizing second degree murder as a lesser included offense of felony murder, therefore, is the common law "theory of transferred intent"; *i.e.,* the intent to commit the felony is "transferred

to the killing accompanying the felony to make it a killing done with 'malice.' " *Ante* at 563 n. 6. Otherwise, the felony murder would lack an element present in second degree murder, with the result that the latter could not be entirely included within the former. *See Pendergrast v. United States,* 332 A.2d 919, 924 (D.C. 1975).

In sum, without the use of transferred intent to create a lesser included offense, an accused could be convicted of both felony murder and second degree murder, although one conviction would have to be vacated as a matter of statutory policy, not merger, since there was only one killing. *See Naples v. United States,* 120 U.S.App. D.C. 123, 131–32, 344 F.2d 508, 516–17 (1964). Similarly, absent the use of transferred intent, if one were indicted separately for felony murder and second degree murder (as in this case), and convicted of the former but acquitted of the latter, the jury necessarily would, and properly could, have found an absence of malice—a result that could not be deemed a nullity for double jeopardy purposes.

It seems to me, therefore, that upon retrial of a felony murder charge when the first jury has acquitted of second degree murder, the second jury can properly consider a second degree murder charge only if there is a clearly articulated and justified rule of law either (1) that second degree murder is a lesser included offense of a felony murder by use of transferred intent, or (2) that the kind of malice inherent in second degree murder as a lesser included offense of felony murder is substantively different from the malice necessarily proved when second degree murder, as such, is charged. In the first instance, the first jury's acquittal of second degree murder would be a nullity; in the second instance, it would be irrelevant.

---

1. One can be convicted of felony murder even when there is not an intentional killing, *e.g.,* when a cashier dies of a heart attack during the course of an armed robbery. It strains the imagination to find an intentional homicide—second degree murder—as a lesser included offense of felony murder under such circumstances.

I am dubious about the use of transferred intent, *see supra* note 1, and I believe the second alternative has no statutory basis. Given the purposes underlying the double jeopardy clause, *see Douglas v. United States*, 488 A.2d 121, 130–31 (D.C. 1985), I have doubts that the state—in retrying a felony murder case after reversal and remand—can properly retry the accused for second degree murder as well when the jury has already acquitted on that charge at the earlier trial. *See Turner v. United States*, 459 A.2d 1054 (D.C. 1985), *aff'd on rehearing*, 474 A.2d 1293 (D.C.1984). The only arguable basis for doing so is a strained legal fiction (transferred intent) deeming second degree murder a lesser included offense of felony murder, thus making the first jury's acquittal a nullity.