Duane A. TOWLES, Appellant,

v.

UNITED STATES, Appellee.

No. 82–964.

District of Columbia Court of Appeals.

Argued March 19, 1986.
Decided Feb. 18, 1987.

Richard S. Bromberg, Washington, D.C., appointed by this court, for appellant.

Ann K.H. Simon, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Carl S. Rauh, Washington, D.C., with whom Roberto Iraola, was on brief, amicus curiae.

1. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

James Klein, with whom Christopher Stone, Washington, D.C., was on brief, for Public Defender Service, amicus curiae.

Before PRYOR, Chief Judge, NEBEKER, MACK, NEWMAN, FERREN, BELSON, ROGERS, and STEADMAN, Associate Judges, and REILLY, Senior Judge.

REILLY, Senior Judge:

This case is before us for reconsideration en banc of certain issues argued before a division of this court which resulted in a decision affirming an order denying appellant's motion to set aside a conviction for second-degree murder, D.C. Code § 22–2403 (1981), at his third trial. That conviction, he contends, denied him the immunity conferred by the Double Jeopardy Clause of the Constitution, inasmuch as the jury at the first trial had returned a verdict of "not guilty" of this offense, when it found him guilty of first-degree (felony) murder, D.C. Code § 22–2401 (1981).

In rejecting this latter contention, the division in its opinion held that second-degree murder is a lesser-included offense of felony murder, the crime of which appellant was convicted at the first trial. Hence, it concluded that the first jury's verdict of acquittal of the lesser crime had no legal significance, for the same jury had found him guilty of a crime which included all the elements of the less serious offense. All the judges assigned to this division felt bound to reach this conclusion because of *Fuller v. United States,* 132 U.S. App. D.C. 264, 293, 407 F.2d 1199, 1228 (1968) (en banc), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969), where it was held that although our local code, § 22–2403, *supra,* defines second-degree murder as a killing "with malice aforethought," such "malice" is established at common law in prosecutions for felony murder by the commission of the underlying felony. As the *Fuller* decision was handed down while the federal circuit was still the highest court in this jurisdiction, it became controlling precedent for any division of this court.[1] Recognizing this, Judge Ferren

concurred with the majority of the division, but expressed "substantial doubt" as to whether the common law "theory of transferred intent" supported the conclusion that second-degree murder was a lesser-included offense of felony murder. He questioned use of a "strained legal fiction" to affirm the conviction for such lesser offense in the face of appellant's prior acquittal on this charge.

After the opinion was released, the court decided that the question raised in the concurrence was one which merited consideration by the full court. Accordingly, it vacated the opinion, set the case down for rehearing en banc, and directed that supplemental briefs be filed and that designated amicus curiae be allowed to participate in oral argument. Having reviewed the record and reexamined the authorities in the light of the arguments advanced, we have come to the conclusion that because there was evidence in this case proving every element of the underlying felony, the element of malice necessary for a second-degree murder conviction was established. Hence, for reasons slightly different from those set forth in the opinion of the division,[2] we affirm the conviction for second-degree murder on the grounds that (1) by not drawing the attention of the trial court to his prior acquittal of second-degree murder before the judge instructed the jury to consider this offense, appellant implicitly waived his right to raise the bar of double jeopardy at trial; (2) even in the absence of an indictment charging second-degree murder, it was proper for the court, in a trial on an indictment accusing defendant of first-degree felony murder, to instruct the jury to consider whether the evidence established murder in the second degree as the commission of such offense was one of the elements encompassed in such indictment.

To put this homicide case into perspective, a brief summary of its history seems appropriate. Appellant has been tried three times for his asserted part in a fatal shooting which occurred one evening in 1976. According to evidence presented by the government, two visitors to the city, leaving an uptown restaurant, were accosted by two young men who had followed them into a dimly lit alley. One of them, brandishing a handgun, demanded their wallets. As one of the victims of the holdup reached to comply, the gunman fired—wounding him and killing his companion. Both assailants fled the scene. They were later arrested. One of them was appellant. He was identified by the surviving victim and a passerby, who had seen the pair running from the alley, as the man who held the gun.[3]

Appellant was indicted on several counts, charging first-degree (felony) murder, D.C. Code § 22–2401 (1981), second-degree murder, id. § 22–2403, attempted armed robbery, and carrying an unlicensed pistol. See note 2, supra. At the end of the trial, the court instructed the jury to return by ballot separate verdicts on each count. The jurors convicted him on one count of first-degree murder, several counts relating to robbery and use of the pistol. On the second-degree murder counts, they found him not guilty. We vacated these convictions for reasons not relevant here, and remanded for a new trial.[4]

Appellant was retried only on those counts of the original indictment with respect to which the first jury had rendered

2. The opinion of the division is reported in *Towles v. United States,* 496 A.2d 560 (D.C.), *vacated,* 497 A.2d 793, *cert. dismissed,* —— U.S. ——, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). The text shows that appellant was also convicted of two counts of attempted robbery while armed, D.C.Code §§ 22–2902, –3202 (1981), and carrying a pistol without a license, *id.* § 22–3204. His conviction on one of the robbery counts was vacated on the ground that it merged with the murder conviction. The contention that appellant had been denied a speedy trial was rejected. Neither this latter holding nor the af-

firmance of the robbery and pistol convictions were subjects of the en banc review.

3. The second youth was tried separately in juvenile court and found guilty of first-degree murder and other offenses as appellant's accomplice. These convictions were affirmed in an unpublished memorandum opinion. *In re N.N.S.,* No. 11834 (D.C. April 11, 1979).

4. *Towles v. United States,* 428 A.2d 836 (D.C. 1981).

guilty verdicts. Before the case was sent to the new jury, however, the judge—not the one who presided at the first trial—asked counsel whether the jury should be asked to consider any "lesser-included offenses." The prosecutor suggested "second-degree murder while armed." The court did not accede to this suggestion until it had ascertained that defense counsel was not voicing any specific objection. Eventually a judgment of mistrial was entered, as the jury became hopelessly deadlocked.

At the third trial—based again upon the amended indictment and conducted before a third judge—the jury, pursuant to a request of the government, was also instructed to consider the "lesser-included" offense of second-degree murder while armed. This time the jury was able to reach a verdict. It found appellant not guilty of first-degree murder, but guilty of second-degree murder and certain other offenses previously mentioned, note 2, *supra*. It is the appeal from this second-degree murder conviction which is now before us, sitting en banc.

## I

■ Before the en banc court, not only appellant and amicus Public Defender Service (which submitted a brief urging reversal of the conviction), but also the appointed amicus contend that the division was mistaken in holding that appellant's acquittal at the first trial was a nullity and therefore barred any claim of double jeopardy. When this appeal was first argued, the majority of the division held that inasmuch as the jury at the first trial had found the appellant guilty of first-degree felony murder "no legal significance can be attached to the first jury's verdict of 'not guilty' on the second-degree count, for it is fundamental that guilt of a lesser-included offense is 'necessarily established by proof of the greater offense.' "[5] We also observed

that by instructing the jury to return verdicts on all counts, the trial court deviated from proper procedure by failing to instruct the jury to consider the lesser offense only if it had previously concluded that there was reasonable doubt concerning the accused's guilt of the greater offense.[6]

We are now told that we were mistaken in deeming the first jury's acquittal on the second-degree murder count a nullity, irrespective of whether or not such crime is a lesser-included offense of felony murder. This proposition derives some support from *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), where the Supreme Court reversed a conviction for felony murder on double jeopardy grounds, observing:

> It is immaterial whether second degree murder is a lesser offense included in a charge of felony murder or not. The vital thing is that it is a distinct and different offense.

*Id.* at 194 n. 14, 78 S.Ct. at 227 n. 14.

In *Green*, however, the defendant had been acquitted of felony murder at the first trial, but convicted of second-degree murder—the converse of what happened at the first trial here. More to the point are cases like *Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962), where the Supreme Court accorded finality to a directed verdict of acquittal as affording immunity from double jeopardy, even though conceding that the Court of Appeals (First Circuit) which had set aside the verdict, might have been correct in holding it flawed by legal error. It now appears settled that any verdict of not guilty, no matter if based on an egregiously erroneous foundation, provides the shield of protection from double jeopardy. *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978). *Accord Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Tibbs v.*

---

**5.** *Towles v. United States, supra* note 2, 496 A.2d at 564.

**6.** *Id.* at 564–65. This proper course of action was described not only in *Franey v. United States*, 382 A.2d 1019 (D.C.1978), but in Crimi-

nal Jury Instructions for the District of Columbia, No. 4.24 (3d ed. 1978), captioned "When Defendant is Charged with both First and Second Degree Murder."

*Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).[7]

But even if it were conceded that appellant had a constitutional right to raise his prior acquittal as a bar to the lesser offense instruction, it is quite another thing to hold that such instruction amounted to reversible error in a case where such right was not invoked until after the jury returned its verdict.

In our division opinion, we noted that in objecting to such instruction, appellant did not mention that the jury in appellant's first trial had found him not guilty of second-degree murder.[8] It was not until the motion for judgment n.o.v. was filed that appellant drew the attention of the trial judge to the verdict of the first jury. We observed that the government's contention that appellant's failure to raise the double jeopardy issue earlier was fatal to his claim, had considerable force on the basis of *Wesley v. United States,* 449 A.2d 282, 283 (D.C.1982), where this court cited with approval a holding that "constitutional immunity from double jeopardy is a personal right which, if not affirmatively pleaded by the defendant at the time of trial, will be regarded as waived." *United States v. Scott,* 150 U.S.App.D.C. 323, 324, 464 F.2d 832, 833 (1972).

Nevertheless, being aware of the "strong presumption ... against waiver of a constitutional right," *Turner v. United States,* 459 A.2d 1054, 1056 (D.C.1983), *aff'd on rehearing,* 474 A.2d 1293 (D.C.1984), we rested our rejection of the double jeopardy defense on other grounds. We are now persuaded, however, that it was unnecessary to do this, for it has been shown to our satisfaction, that for tactical reasons appellant did waive his right to raise the matter of double jeopardy.[9]

Were it not for the revealing transcript of the second trial, it would be possible to infer that the government's request for a second-degree murder instruction at the third trial took defense counsel by surprise. Hence, it could have been argued that the latter's failure to specify the prior acquittal as the ground for the objection he voiced was an excusable oversight. It is now apparent, however, that because the government had made the identical request at the second trial, where the same lawyer had represented appellant, the latter must have anticipated being asked to state the position of the defense on this question at the third trial during the customary bench conference on proposed instructions.[10]

7. *See also Ball v. United States,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

8. *See Towles v. United States, supra* note 2, 496 A.2d at 562–63 and n. 3, for the colloquy between bench, prosecutor and defense counsel on the proposed instruction.

9. We are indebted to the illuminating analysis of this issue by Carl S. Rauh, a member of the bar of this jurisdiction. In preparing his amicus brief, he ordered a transcript of the second trial. The division did not have this document before it when it disposed of the appeal. Apparently, because the second trial was aborted by a hung jury, the record had not previously been transcribed.

10. A pertinent segment of the transcript of the bench conference at the second trial reads:

THE COURT: *Are you then asking that they not be given a lesser included offense of murder in the second degree?*
MR. REGAN: [Defense counsel] *No, Your Honor, I am not asking that.*
THE COURT: Then you want me to have them consider that?

MR. REGAN: I think—I don't think it is inappropriate for the Government to ask for it. We haven't asked for it, and I will argue against it.
THE COURT: If you don't want it, you better tell me, because I may not give it, if you don't want it.
Do you want to confer with Mr. Bromberg?
MR. REGAN: Well, yes, Your Honor.
[A pause.]
MR. REGAN: Well, I think that—*I don't want to be waiving anything with respect to the lesser included,* Your Honor. I just don't—and I will—I intend—I want the Court on notice, I intend to argue to the jury not to take the lesser included option.
I just don't want the Court to think that, on the one hand, asking for—
THE COURT: Well, you see, I don't know how to rule, because I don't know whether you are telling me don't give it to them to consider.
MR. REGAN: I'm going to ask them not to consider it.
THE COURT: I understand what you're going to do. *But do you want me not to give it to them?*

Consequently, counsel's failure to pinpoint double jeopardy as the basis for his objection must be deemed a tactical choice on his part.

It is not difficult to understand the reason for defense counsel's adoption of a strategy of evasiveness at the third trial. Had he expressly assigned double jeopardy as the reason for his objection, he would then have been forced to focus the attention of the trial judge on the first jury's disposition of the "lesser offense" charge. Under such circumstances, there was a strong likelihood that the trial judge would have sustained his objection and declined to give the proposed instruction. But this might well have amounted to a Pyrrhic victory, for then the jury would have been left with only the options of conviction or acquittal of the first-degree murder charge, punishable by a mandatory sentence of imprisonment for life. D.C. Code § 22–2404(a) (1981). Rather than depriving his client of a possible safety valve against the dire probability of a conviction for felony murder, appellant's counsel tacitly encouraged the giving of the second-degree charge by suggesting, but not arguing for, a manslaughter charge and then registering an unexplained objection "for the record." No doubt, he expected on this basis, to preserve the double jeopardy bar for post-judgment motion should the jury find him guilty of the lesser homicide offense, but under the case law of this jurisdiction he was not entitled to do this.[11] It is plain that his tactics amounted to a waiving of double jeopardy.

## II

■ We now turn to the issue of whether the giving of the second-degree murder instruction over the objection of the defense amounted to error. Appellant and amicus, Public Defender, argue that it was indeed error as the amended indictment on retrial contained no averments which put defendant on specific notice that he was charged with conduct defined as second-degree murder. According to the Public Defender, irrespective of whether this offense was necessarily included in the greater offense specified in the indictment, such trial court action unconstitutionally broadened the indictment in disregard of two recent decisions of the Supreme Court. *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), and *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985).

In *Stirone*, the indictment charged defendant with a violation of the Hobbs Act for interference with interstate commerce, consisting of interfering with shipments of sand from one state to another. The evidence disclosed that the defendant's conduct had also obstructed a steel mill from making shipments of steel to another state. The trial court then instructed the jury that the requisite interference could be found from either the sand or the steel. Defendant's resulting conviction was reversed by the Supreme Court, which found that the indictment had not charged any interference with steel exports. Hence, it reversed the conviction holding that "the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference ... which the grand jury did not charge." *Stirone, supra,* 361 U.S. at 218, 80 S.Ct. at 273.

The *Miller* case apparently is cited merely because it cited *Stirone* with approval and distinguished it from a ruling challenged in a mail fraud case, where the trial court in a multi-count indictment, withdrew from jury consideration all charges except one for which there was supporting proof.

We are at a loss to perceive any bearing of these decisions upon the issue confronting us. All the Supreme Court did in the cited cases was to emphasize the familiar principle that where a defendant is convicted of something not charged in an indictment, there is a fatal variance between

---

MR. REGAN: *I think I would be hard-pressed to do that, given the fact this is a first degree felony.*
THE COURT: *All right. Then it will be given.*

[Emphasis added.]

**11.** *E.g.,* the *Wesley* and *Scott* cases, cited in the text, *supra* at 8.

pleading and proof. The very concept of a "lesser-included" offense, however, is that when a defendant is charged by indictment with a serious felony he is automatically accused of the elements of less serious crimes which fall short of the major offense. Consequently, he cannot be heard to complain of the conviction of a lesser-included offense, where there is proof of commission of the acts defined by statutes as constituting such offense. But the judgment reversed in *Stirone* was not a conviction for a lesser-included offense, for a charge of interfering with exports of sand can scarcely be said to encompass interference with steel shipments. Hence, we cannot accept Public Defender's thesis that "this jurisdiction's special rule permitting instructions on second-degree murder as a lesser-included offense of felony murder unconstitutionally broadens the indictment." [12]

There remains the question of whether the en banc court should, as a matter of sound statutory construction, repudiate the rule that a killing defined as second-degree murder in § 22–2403 of the Code, *supra*, falls as a lesser-included offense within the scope of an indictment for felony murder, defined in *id.* § 22–2401 as a murder in the first degree for any person, who "without purpose so to do kills another in perpetrating or in attempting to perpetrate any arson ... rape, mayhem, robbery, or kidnapping," etc. There is no doubt a contrast between the words "without purpose" and the words "with malice aforethought" used in the section describing second-degree murder.

Yet, we do not deem the common law principle which imputes malice as an element common to felony murder far-fetched or a "strained legal fiction" in cases like

the instant one, where a person engaged in a robbery attempt uses a deadly weapon to accomplish his objective. While he may not have brought such weapon with him for the purpose of killing his victim, surely the use of a loaded and cocked pistol evidences intent to kill if necessary in order to overcome resistance, prevent a counter-assault, or to effectuate his getaway. Consequently, we are reluctant to hold that the second-degree instruction at the third trial, based on the concept of "lesser-included," was improper.

While it is true, as the Public Defender argues, that defendant is entitled to notice of the charges he may have to defend against, we think it settled that an indictment charging felony murder serves to put a defendant on notice "that the facts of the homicide are to be brought out, that a verdict of second-degree murder is appropriate if there is proof from which the jury might reasonably find that the defendant did not commit one of the enumerated felonies but was guilty of an intentional killing on impulse, and that on this state of proof a charge of second-degree murder as a lesser-included offense may be requested *by prosecution or defense.*" *United States v. Whitaker,* 144 U.S. App. D.C. 344, 348 n. 11, 447 F.2d 314, 318 n. 11 (1971) (emphasis added) [13] (quoting *Fuller v. United States, supra,* 132 U.S.App.D.C. at 294, 407 F.2d at 1229).

Moreover, in the context of the case before us, the inclusion of murder in the second degree as within the scope of the indictment meets the test enunciated in the *Whitaker* decision, *supra,* 144 U.S.App. D.C. at 349, 447 F.2d at 319, which added to traditional lesser-included analysis,

... the caveat that there must also be an "inherent" relationship between the

---

**12.** In characterizing this practice as a "special rule" peculiar to this jurisdiction, the Public Defender cited the comments made by the Supreme Court in *Green v. United States, supra,* 355 U.S. at 194 n. 14, 78 S.Ct. at 227, and *Whalen v. United States,* 445 U.S. 684, 693 n. 7, 100 S.Ct. 1432, 1438 n. 7, 63 L.Ed.2d 715 (1980), on this rule. In neither case did the Court pass upon its validity.

**13.** Public Defender's brief, ignoring this footnote, contends that the *Whitaker* opinion held that while it is within the province of a defense counsel to request a lesser-included instruction, the prosecutor had no such right. Actually what that opinion held was that the right to make such requests is not always mutual. It depends on the circumstances. In the instant case, the defense objection to the requested instruction in no way challenged the prosecutor's right to make such request.

greater and lesser offenses, *i.e.*, they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense....

What this caveat stands for apparently is that there may be some felony murder cases where a lesser-included offense instruction is inappropriate. In other words, there must be something in the evidence at each trial to justify the giving of such instructions. While this court has not expressly adopted this formula, it does appear that second-degree murder and felony murder are inherently related in the *Whitaker* sense. As the *Whitaker* opinion was well reasoned, we consider this factor in reaching our determination.

In any event, the common law rule respecting underlying malice as an essential element in a felony murder is deeply imbedded in the interpretation of the District of Columbia criminal code. In deciding a cognate issue, the question of whether convictions for both felony murder and premeditated murder were permissible when based on the same killing, this court analyzed the history of the challenged rule and concluded that it rested on a sound foundation. *See Byrd v. United States*, 500 A.2d 1376–86 (D.C. 1985), 510 A.2d 1035 (D.C.1986) (en banc).[14] In view of this recent decision, it would be highly inconsistent to overrule the panel opinion here.

*Affirmed.*

**14.** We direct attention in particular to the discussion of this point in *Byrd, supra*, 500 A.2d at 1384–87, later adopted as part of the holding by the en banc court, 510 A.2d at 1035. Contrary to the comment in footnote 2 *infra* p. 658 of the dissent, the authorities cited in this portion of the opinion demonstrate that evidence that a killing occurred in the commission of a felony has long been recognized as "an alternative means of demonstrating common law malice." 500 A.2d at 1386. An indictment for felony murder charges the accused with malice as an element of the offense. Such indictment therefore places the accused on notice that he is charged with the malice element which is found in second-degree murder.

**1.** Act of Feb. 27, 1801, ch. 15, 2 Stat. 103.

NEWMAN, Associate Judge, dissenting, joined by MACK and FERREN, Associate Judges:

From the creation of the judicial system of the District of Columbia in 1801[1] until the decision of this case and its companion case, *Byrd v. United States*, 510 A.2d 1035 (D.C.1986)—which were heard by the en banc court on the same day—no court in the District of Columbia has ever adopted the legal fictions of "felony murder malice" or "transferred malice" in the law of murder. A majority of this court has now done so. They have done so, in my judgment, without analysis or reasoning. The majority cites to no legal authority in this jurisdiction or elsewhere.[2] They cite no commentary or scholarly work. The majority merely pronounces an *ipsi dixit*. From this unprincipled and erroneous holding, I dissent.

I

Our first degree murder statute, D.C. Code § 22–2401 (1981) provides:

Whoever, being of sound memory and discretion, kills another purposely, either of deliberate and premeditated malice or by means of poison, or in perpetrating or attempting to perpetrate any offense punishable by imprisonment in the penitentiary, or without purpose so to do kills another in perpetrating or in attempting to perpetrate any arson, as defined in § 22–401 or 22–402, rape, mayhem, robbery, or kidnapping, or in perpetrating or

**2.** Although the majority cites the division opinion in *Byrd v. United States*, 500 A.2d 1376, 1386 (D.C.1985), which the en banc court adopted, *see Byrd v. United States, supra*, 510 A.2d at 1037, the only case or authority cited in either *Byrd* opinion on this issue is a *cf.* cite. That citation reads in full:

*Cf. Thorne v. United States*, 471 A.2d 247, 248 (D.C.1983) (in burglary prosecution, proof that appellant harbored not only intent to assault but also intent to destroy property did not constitute proof of an additional fact for merger analysis; one of two convictions for burglary based on single act of entry ordered vacated).

*Byrd v. United States, supra*, 500 A.2d at 1386.

attempting to perpetrate any house-breaking while armed with or using a dangerous weapon, is guilty of murder in the first degree.

As is apparent, the statute defines two types of felony murder: (1) purposely killing another while perpetrating or attempting to perpetrate any felony, and (2) without purpose to do so, killing any person while perpetrating or attempting to perpetrate arson, rape, mayhem, robbery or kidnapping, or an armed housebreaking. It is the latter type of felony murder, a non-purposeful killing, with which we deal in this case. It is on this context that our analysis must focus and to which I now turn.

## II

Rule 31(c) of the Superior Court Rules of Criminal Procedure provides, in relevant part, that the "defendant may be found guilty of an offense necessarily included in the offense charged." Under this rule and the doctrine of lesser included offenses adopted by this court, either side may have the jury instructed on a lesser included offense if "the lesser offense which was not charged 'consist[s] entirely of some but not all of the elements of the greater offense' which was charged." *Hawkins v. United States*, 399 A.2d 1306, 1307 (D.C. 1979) (quoting *Pendergrast v. United States*, 332 A.2d 919, 924 (D.C.1975)). *See Sansone v. United States*, 380 U.S. 343, 349, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965). The standard is applied by ascertaining whether all the elements of the lesser offense are contained in the greater. *Kelly v. United States*, 125 U.S. App. D.C. 205, 206, 370 F.2d 227, 228 (1966), *cert. denied*, 388 U.S. 913, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967).

In considering whether second degree murder is a lesser included offense of first degree felony murder according to this standard, we must start with the statutory definitions of these two crimes. D.C. Code § 22–2403 (1981) defines second degree murder as a killing committed with "malice aforethought." Although this court has not set out a systematic explanation of the malice required for second degree murder, juries in the jurisdiction are commonly instructed on the malice element of this offense as follows:

"Malice" does not necessarily imply ill-will, spite, hatred, or hostility by the defendant toward the person killed. "Malice" is a state of mind showing a heart regardless of the life and safety of others. It may also be defined as the condition of mind which prompts a person to do willfully, that is, on purpose, without adequate provocation, justification or excuse, a wrongful act whose foreseeable consequence is death or serious bodily injury to another.

Criminal Jury Instructions for the District of Columbia, No. 4.23 (3d ed. 1978). In other words, the states of mind required for a finding of malice are: (1) an intent to act in callous disregard for the life and safety of others, or (2) an intent to cause death or serious bodily injury. *See Powell v. United States*, 485 A.2d 596, 603 (D.C. 1984) (Rogers, J., dissenting), *cert. denied*, ⎯ U.S. ⎯, 106 S.Ct. 420, 88 L.Ed.2d 339 (1985). By contrast, as it concerns us here, felony murder is defined as a killing committed "without purpose so to do" while perpetrating or attempting to perpetrate any of six enumerated felonies. D.C. Code § 22–2401 (1981).

It is apparent from these definitions that second degree murder requires proof of a mental state element which is irrelevant to felony murder; one may be convicted of the latter even if the killing was entirely unintentional, if it was committed during the course of an enumerated felony. Applying traditional lesser offense analysis to the terms of the statutes, then, second degree murder is not a lesser included offense of felony murder, but a distinct crime. *See generally Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *Ball v. United States*, 429 A.2d 1353, 1361 (D.C.1981) (test of whether there are two offenses or only one is whether each crime requires proof of a fact that the other does not).[3]

**3.** Both the federal circuit court in *Fuller v. Unit-* *ed States* and the division of this court which

The United States, by attributing to felony murder an element of intent described as "felony murder malice", contends that all the elements of second degree murder are contained in felony murder, and that, therefore, the former is a lesser included offense of the latter according to traditional analysis. Felony murder malice, the argument goes, was one of the four types of the "malice aforethought" common to all murder under the common law, the other three types being intent to kill, intent to cause serious bodily injury, and wanton disregard for the lives of others. When the criminal law was codified in the District, two categories of malice were raised to first degree status: felony murder in the course of any of six enumerated felonies, and premeditated intent to kill. Thus, the argument continues, all of the present statutory forms of murder, first degree premeditated, first degree felony murder, and second degree murder, require proof of a malice element derived from the common law. It is merely the particular "manifestation" or "category" of malice which varies from one offense to the other. In the case of felony murder, the malice element is established by proof of the commission of the felony.[4]

The majority, citing dicta in the opinion of a division of this court in *Byrd v. United States, supra* note 2, 500 A.2d at 1386, agrees with appellee's reasoning. Maj.Op. at 658. I find this variation on the transferred intent theme to be unconvincing. At bottom, it imputes an element of intent to felony murder, where there is none. Whether felony murder was once included

first heard the instant appeal recognized that, shorn of the legal fiction of transferred intent, the two crimes were distinct offenses. *Fuller v. United States,* 132 U.S.App.D.C. 264, 293, 407 F.2d 1199, 1228 (1968) (en banc), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969); *Towles v. United States,* 496 A.2d 560, 563 n. 6 (D.C.), *vacated,* 497 A.2d 793, *cert. dismissed,* —— U.S. ——, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). *See also United States v. Whitaker,* 144 U.S.App.D.C. 344, 348 n. 11, 447 F.2d 314, 318 n. 11 (1971).

4. Correlatively, appellee argues that in 1940 when Congress raised to first degree status killings done in the course of six enumerated felonies, it left a residual category of second degree

under the common law label "malice aforethought" is not, to my mind, a determinative consideration. While it is true that "[i]n the absence of a statutory definition of the elements of a crime, the common law definition is controlling," *Perkins v. United States,* 446 A.2d 19, 23 (D.C.1982), we have here a statutory definition of first degree felony murder whose use of the language "without purpose so to do" directly contradicts the imputation of any form of intent. The fact is that a jury in a second degree murder trial must find such intent to have been present during the killing; in a felony murder trial, it need not. The government's contention that, under traditional lesser offense doctrine, felony murder contains all of the elements of second degree murder is refuted by reason, as well as by prior pronouncements of courts in this jurisdiction recognizing the two offenses as having distinct elements. *See supra* note 3.

### III

The majority relies on still another device to justify second degree murder as a lesser included offense of felony murder. It appears to adopt the common law doctrine of transferred intent, a legal fiction whereby the intent to commit the underlying felony is transferred to the killing accompanying the felony to make it a killing committed with malice.

Until now, this common law doctrine has never been adopted in this jurisdiction, as the division which first heard the present appeal recognized. *Towles, supra* note 3,

felony murder, consisting of non-purposeful killings committed in the course of a non-enumerated felony. Thus, asserts the government, there exists a category of second degree murder malice, which, like first degree "felony murder malice," does not require a charge or proof of any intent element. The government fails to cite any case in this jurisdiction indicating the existence of some "residual" second degree felony murder, nor am I aware of any. None of the cases in this jurisdiction which have allowed second degree murder to stand as a lesser included offense of felony murder have done so on the basis that the jury could have found the killing to have been committed during an unenumerated felony.

496 A.2d at 563 n. 6. *See also Fuller, supra* note 3, 132 U.S.App.D.C. at 294, 407 F.2d at 1229. I am uncertain as to what extent the majority purports to adopt the doctrine now. The majority rather timidly proposes that transferred intent is not "far-fetched or a 'strained legal fiction' in cases like the instant one, where a person engaged in a robbery attempt uses a deadly weapon to accomplish his objective." Maj. Op. at 657. Does this mean that intent will be imputed only to killings done in the course of felonies committed with a deadly weapon? If so, how can we justify singling out this category of felony murders for special transferred-intent treatment? Short of adopting the common law presumption of intent in all felony murder cases, neither this court nor the trial court is entitled to decide as a matter of law, in some felony murder cases but not in others, what is essentially a factual issue to be charged by the grand jury in the indictment and decided by the petit jury at trial: whether the defendant intended to kill the victim of the felony.

Assuming for the sake of argument that the transferred intent doctrine is "not far-fetched ... in cases like the instant one," what would the majority do with other cases where its application *is* far-fetched?[5] Again, are we to say that the doctrine of transferred intent will apply in some cases of felony murder but not in others, depending upon how far-fetched its application would be?

In this as in all areas of the law, the legal principles supporting our decisions must be reasoned and consistent. This court must either accept the common law doctrine of transferred intent, applying it in all felony murder cases, or reject it entirely. If it is rejected, the rule allowing instruction in second degree murder as a lesser included offense of felony murder is left with no foundation in legal reason. If it is adopted, we must be prepared to accept a legal fiction which is, at best, not far-fetched in the view of some judges in some cases, as the sole rationale for a practice which, without such justification, would have to be considered an infringement on the constitutional rights of a criminal defendant. I do not accord such little weight to those rights.

## IV

Both appellee and amicus Rauh, perhaps cognizant of the conceptual difficulties in considering second degree murder a lesser included offense of felony murder under traditional lesser offense analysis, endorse the less stringent standard set forth in *United States v. Whitaker, supra* note 3.[6] Supplemental Brief For Appellee at 16–19; Brief For Amicus Curiae Rauh at 15–17. The majority, though declining to expressly adopt the *Whitaker* formula, chooses to consider it as a factor, and finds that the two offenses are "inherently related in the *Whitaker* sense." Maj.Op. at 658.

Putting aside the question of whether second degree murder and felony murder do meet the *Whitaker* "inherent relationship" standard,[7] appellee and the majority are mistaken in applying this formula to the facts of the present case.

---

**5.** Judge Ferren, concurring in the majority opinion of the division which originally heard this appeal, notes, for example, the hypothetical case of a cashier dying of a heart attack during the course of an armed robbery. "It strains the imagination to find an intentional homicide—second degree murder—as a lesser included offense of felony murder under such circumstances." *Towles, supra* note 3, 496 A.2d at 566 n. 1 (Ferren, J., concurring).

**6.** *Whitaker* is not binding precedent in this jurisdiction, since it was decided subsequent to the effective date of court reorganization. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

**7.** According to *Whitaker,* to be inherently related, the greater and lesser offenses "must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense." 144 U.S.App.D.C. at 349, 447 F.2d at 319. Even if this standard were applicable to the present case, I have serious doubts as to whether the two offenses at issue here would meet it, since the proof of intent required for a showing of second degree murder is not, even in the general run of these cases, "necessarily" presented as part of the showing of felony murder.

In *Whitaker,* defendant, indicted for first degree burglary, was denied a request to instruct the jury on unlawful entry as a lesser included offense. The circuit court held that although the element of trespass in the lesser offense of unlawful entry was, in rare circumstances, not required for a showing of the greater offense of burglary, the instruction should have been permitted: *"defendant* is entitled to invoke Rule 31(c) when a lesser offense is established by the evidence adduced at trial in proof of the greater offense, with the caveat that there must also be an 'inherent' relationship between the greater and lesser offenses." *Id.* at 349, 447 F.2d at 319 (emphasis added). The word "defendant" is to be stressed. The *Whitaker* court took pains to emphasize that its analysis did not apply to *prosecution* requests for lesser offense instructions, pains which were apparently ·wasted on appellee and amicus Rauh. In the second half of its opinion, the court stressed that, in addition to analysis of the congruity of elements, "[t]here is another strand of traditional doctrine present in lesser included offense law, of common law and constitutional origin, that the nature of the charge in the indictment must be such as to give the defendant notice that he could at the same time face the lesser included offense charge." *Id.* at 350, 447 F.2d at 320. The court then went on to abandon the traditional rule of mutuality, by which the right of the defense to a lesser-included offense instruction could not exceed that of the prosecution, reasoning that "[t]he defense ought not to be restricted by the stringent constitutional limits upon the prosecutor's right." *Id.* at 351, 447 F.2d at 321. *Whitaker* thus left untouched the constitutional notice restrictions on prosecution-requested instructions, applying its new "inherent relationship" analysis only to instructions requested by the defense.

This court has never applied the *Whitaker* "inherent relationship" formula to lesser offense instructions requested by the prosecution; in fact, we have specifically declined to do so. In *In re W.B.W.,* 397 A.2d 143 (D.C.1979), the District of Columbia advanced the "inherent relationship" formula to support a conviction of malicious burning as a lesser-included offense of the charged offense of arson, even though the elements of the former were not strictly included in the latter. This court rejected the formula:

> [T]he government has failed to carry its analysis of *Whitaker* far enough, for the *Whitaker* court went beyond the statement quoted above [setting out the inherent relationship standard] and established a further requirement of notice when applying this "novel" approach.... Thus the prosecutor's right to invoke the lesser-included offense doctrine ... is limited to the offense of which defendant has been given notice by the indictment....

*Id.* at 148 (citations omitted). The arguments of appellee and amicus Rauh are substantially similar to those advanced by the government in *W.B.W.,* and, in my view, must be rejected here as they were there. *Whitaker* has no bearing on lesser included offense instructions requested by the prosecution, except in its reiteration of the constitutional limitations which restrict them.

V

Once the *Whitaker* analysis is rejected, as it must be, the "special" lesser-included offense rule is left standing on, at most, the flimsy foundation of transferred intent, a legal fiction which has never been adopted in this jurisdiction. The inherent weakness in the logical and legal foundations of this rule[8] is apparent in *Fuller v. United States, supra* note 3, the case which has been cited as controlling authori-

---

**8.** Amicus Public Defender Service suggests that the rule may merely be the result of a historical anomaly in the codification of the murder statute in the District. Prior to the 1940 amendment of the statute, conviction for first degree felony murder required proof of both the commission of the felony *and* intent to kill. Thus, second degree murder was legitimately a lesser-included offense of felony murder. Since the 1940 amendment, however, first degree felony murder has not required an allegation or proof of intent to kill, but the practice of instructing on second degree murder as a lesser included offense seems to have survived.

ty supporting it. *See Towles, supra* note 3, 496 A.2d at 563–64; *Whalen v. United States,* 379 A.2d 1152, 1158 (D.C.1977), *rev'd on other grounds,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Declining to rule on the applicability of the transferred intent doctrine in the District, the *Fuller* court could offer as its only justification for the rule the fact that the practice had been permitted for a long time in the District; therefore, defense counsel in a felony murder trial would be on notice that a second degree murder instruction would be allowed the prosecution even though not charged in the indictment. 132 U.S. App.D.C. at 294–95, 407 F.2d at 1229–30. *See also Jackson v. United States,* 114 U.S.App.D.C. 181, 183, 313 F.2d 572, 574 (1962). I submit that a practice which finds as its only justification the fact that it has always been done, has no justification at all.

The practice must be reexamined in the light shed by the fifth and sixth amendments. The fifth amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The sixth amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. The purpose of the requirement that a person be indicted by a grand jury is to "limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). The indictment must contain the elements of the offense charged so as to apprise the defendant of what he must be prepared to meet. *Russell v. United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962). A jury may not be instructed on an offense involving elements not charged in the indictment; to do so would be

> [t]o allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment [and]

would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

*Id.* at 770.

The majority finds these constitutional principles inapplicable to the present case. Maj.Op. at 657. I find them determinative. If the government had intended to seek a conviction for second degree murder in addition to first degree felony murder, it could simply have shown the grand jury evidence to obtain a second degree murder indictment as well. It did not do so. The trial court, relying on a rule which permits courts to read felony murder indictments as if they alleged an element which they do not, permitted an instruction on an offense which exceeded the scope of the indictment. In my view, this rule is contrary to lesser included offense law and unsupported in logic; its application is violative of defendant's constitutional rights. I would reverse the trial court's order denying appellant's motion to set aside his conviction of second degree murder.